Where a person wrote a letter to his friend, residing in a commercial town, in these words : " Mr. Baker is going to your place to buy goods ; he has been a merchant some years at Aurora, Erie county ; has bought his goods at Buffalo, Utica, and elsewhere, heretofore ; any assistance you may give him by way of buying, would be thankfully acknowledged, he being an acquaintance of mine ;" and the friend, in consequence of such letter, recommended Baker as worthy of credit, who obtained goods by means of such recommendation, and the vendor of the goods, by the fraud and insolvency of Baker, was prevented from obtaining payment for his goods ; *it was held,* that the writer of the letter was subject to an action for the *false recommendation* of Baker, on the ground of the *suppression of the facts* that the writer of the letter then held *three judgments* against Baker, on which his property was subsequently sold, and the knowledge possessed by him that Baker was embarrassed in his circumstances and must fail ; and *it was further held,* that the writer of the letter was liable for the recommendations given by his friend, the object of the letter manifestly being to enable the person to whom it was addressed to aid Baker in procuring credit, and that all necessary information ought therefore to have been given so that he might have judged whether Baker could safely be trusted.

An action on the *case* lies for a *false recommendation* as to the credit of one person, by which another sustains damage, if such recommendation be made with the *intent* to *deceive* and *defraud* such other person ; the information, however, must be communicated to, and relied on by the party injured, and must cause the damage.

NEW-YORK,
May, 1831.

Allen
v.
Addington.

The false representation may consist in the *suppression* of the truth as well as in the *assertion* of a falsehood, and the action lies in either case, if the intention to deceive exists, and is the cause of the suppression of the truth or the assertion of the falsehood.

It is not necessary to the maintenance of the action, that the person making the false affirmation is to be benefitted by the fraud.

Nor is it necessary that the intention should exist to defraud the plaintiff in particular ; if a person intending to defraud somebody, gives a *general recommendation* of credit to an insolvent person, any one who sustains damage by reason of such recommendation, is entitled to an action for such damage, grounded upon the fraud.

A party making a fraudulent representation is liable to an action, although other recommendations were given which had an influence on the mind of the party injured, if the recommendation complained of as fraudulent was that which procured the credit.

A *false representation* with a *fraudulent intent* is enough to sustain the action, where it appears that the party injured relied on the representation, and was deceived by it ; and it is not necessary to shew that a deceit was practiced for the purpose of throwing the party off his guard.

A communication made to a *clerk* or agent of a merchant, is the same as if made to the principal.

Where goods are obtained by a *fraudulent representation*, and an action is brought for the injury, the jury are authorised to give damages for the punishment of the fraud, over and above the value of the goods.

In an action on the case for a fraudulent representation, a count in a declaration is good, which charges that the defendant induced A., by *letter* addressed to him, to assist B. to procure goods on credit, the defendant well knowing that B. was not worthy of credit ; that A. did assist B. to procure goods of the plaintiff on credit, and that the plaintiff, confiding in the letter of the defendant and in the representations of A. made at the instance of the the defendant, sold goods to B. on credit ; concluding with an averment that the defendant fraudulently deceived, and caused the plaintiff to be deceived, and that by means, &c. the plaintiff lost his goods and the value thereof. So a count is good, charging the defendant with falsely and fraudulently inducing another to assist an insolvent person in obtaining goods on credit, &c.

THIS was an action *on the case*, tried at the New-York circuit in September, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The declaration contains three counts: The first charges that the defendant intending to deceive and defraud the plaintiff, wrongfully and deceitfully encouraged and persuaded him to sell to one George W. Baker, goods, wares and merchandise of the value of $2000, upon credit, by falsely, deceitfully and fraudulently representing to the plaintiff that Baker was a per-

son safely to be trusted and given credit to; that the plaintiff, confiding in the representation of the defendant, sold and delivered such goods, wares and merchandise to Baker upon credit; whereas, at the time of such representation, the defendant knew that Baker was not safely to be trusted and given credit to. The count concludes with an averment that the defendant fraudulently deceived the plaintiff by the representation made by him, and that by means thereof, the plaintiff has lost his goods and the value of the same. The *second* count charges that the defendant induced E. Wilson, jun. by a letter addressed to him, to assist Baker to procure goods on trust and credit in the city of New-York, he, the defendant, well knowing at the time that Baker was largely indebted to him, and unworthy of trust and credit; that Wilson assisted Baker to procure goods of the plaintiff upon trust and credit; that the plaintiff confiding in, and giving credit to the letter written by the defendant, and to the representations made by Wilson at the instance of the defendant, sold and delivered divers other goods, &c. of the value of $2000 upon credit to Baker. It is then averred that Baker was largely indebted to the defendant, and was not a person safely to be trusted and given credit to, and that the defendant well knew it; that the defendant fraudulently deceived and caused the plaintiff to be deceived, and that by means, &c. the plaintiff has lost his goods and the value thereof. The *third* count charges that the defendant, intending to deceive and defraud the plaintiff, wrongfully and deceitfully encouraged and persuaded him to sell and deliver to Baker, divers goods, &c. of the value of $2000, upon trust and credit, and that for that purpose he falsely, deceitfully and fraudulently induced and persuaded E. Wilson, jun. to assist Baker to procure goods on credit from the plaintiff, Baker being at the time largely indebted to the defendant, and he knowing that Baker was not worthy of trust, and credit; that Wilson did assist Baker to purchase goods of the plaintiff on credit, and that the plaintiff, confiding in the representations of the defendant and of Wilson, at the instance of the defendant, sold and delivered goods of the value of $2000, upon credit to Baker; whereas, at the time of such representations, Baker was largely indebted to the defendant, and was not safely to be trusted and given credit to, as the defendant

NEW-YORK,
May, 1831.

Allen
v.
Addington.

NEW-YORK, May, 1831.

Allen
v.
Addington.

well knew; concluding with an averment that the defendant fraudulently deceived and caused the plaintiff to be deceived, and that by means, &c. the plaintiff has lost his goods and the value thereof. The defendant pleaded the general issue.

In November, 1825, Baker bought goods of the plaintiff on credit, to the amount of $1647,38; the sale was made by a *clerk* of the plaintiff of the name of Havens; when Baker first introduced himself, he shewed Havens a letter of recommendation from a Mr. Hickcox, a merchant at Buffalo, addressed to a mercantile house in New-York, of whom inquiries were made by the plaintiff; Baker also gave a reference to a Mr. Wilson, a dealer in provisions in New-York; Havens called on Wilson, who said he had some knowledge of Baker, and mentioned that he had received a letter from Addington, but did not shew it; and in answer to an inquiry of Havens *whether he would trust Baker*, said that if he was selling goods, *he would sell to Baker on Addington's recommendation.* The plaintiff did not know Addington, nor was Wilson acquainted with the plaintiff; when Havens called on Wilson, he understood he was a clerk in a store. The letter referred to by Wilson, was produced on the trial; it is dated 1st November, 1825, and is in these words; " The bearer, Mr. E. W. Baker, is the *name* who I informed you when at Utica I had agreed with for beef, and would drive to the Palmyra establishment; he has had 327 bbls. packed there, marked with my name, and forwarded to your yard. The beef I have purchased shall start for your place next week. Mr. Richards and myself have had some difficulty, of which I shall inform you when at your place, and look to you for justice. Mr. Baker is going to your place to buy goods; he has been a merchant some years at Aurora, Erie county; has bought his goods at Buffalo, Utica and elsewhere, heretofore; any assistance you may give him by way of buying, would be thankfully acknowledged, he being an acquaintance of mine." At the time of the writing of this letter, Addington held two judgments against Baker, one for $460, entered in July, 1823; another for $1000, entered August, 1823, and at the same time held a bond and warrant, authorizing a confession of judgment for $760, which was entered in January, 1826. Shortly previous to obtaining the goods of

plaintiff, Baker, on his way to New-York, from Aurora in the county of Erie, called on Addington, who is his *uncle*, at Paris, in the county of Oneida, and gave him an order for 327 barrels of beef which he had packed at Palmyra, and for 3700 weight of tallow, and received from him the letter, directed to Wilson. Soon after Baker left for New-York, Addington, in speaking of him, said that Baker's affairs were so deranged that he could not get along; that he must fail, and that he had advised him to go to New-York and get what goods he could. On being told that such was not a moral course, and that a man had better stop when he found that he was not able to pay his debts, Addington replied that he thought not in that case, Baker owed him a considerable sum, that he would be able to get his pay, and he thought Baker would have enough left to compromise with his creditors. On Baker's way home from New-York, Addington advanced him $1000, to enable him to quiet his creditors in Albany, where he owed about $4000, for goods contracted the previous year. The goods he purchased in New-York amounted to between $3500 and $4000; they arrived at Aurora in December. About six weeks before his failure, Baker sent word to Addington to come and sell him out; and on the 1st of March, 1826, executions were issued on the three judgments of Addington, there then being no other judgments against Baker; and all the goods in two stores occupied by him, one at Aurora and the other at Wales, were sold and bought in by Addington. From the time of the sale under the executions in March, 1826, until shortly before the trial in September, 1829, Baker had charge of the goods, for the purpose of selling them, as the agent of Addington. After the sale, Addington offered to turn out property on the plaintiff's debt, to the amount of ten shillings on the pound; and in the spring of 1826, made a similar offer to another creditor, and made a compromise with another, at 6s. 8d. on the pound. After the goods were delivered to Baker and shipped by him on board a steam-boat, Havens, the clerk of the plaintiff, doubting whether he had made a good sale, consulted with the plaintiff as to the propriety of pursuing the goods; he then saw Wilson a second time, and the project of pursuing the goods was abandoned, in consequence of what

NEW-YORK,
May, 1831.

Allen
v.
Addington.

was said by Wilson in that interview. Baker, examined as a witness on the part of the defendant, proved the statements in the letter to Wilson, in respect to himself to be *true.* He said the letter was delivered to him sealed, and that he knew not its contents until it was read on the trial; and denied all collusion between him and Addington as to purchasing goods in New-York for the purpose of subjecting them to Addington's claim, or satisfying his debt. He acknowledged that he referred Havens to Wilson, but said he did so previous to delivering the letter to Wilson, which he stated was not delivered until after the goods obtained by him of the plaintiff were shipped on board a steam-boat. As to the time of the delivery of the letter to Wilson, the testimony was contradictory. Previous to producing witnesses on his part, the defendant moved for a nonsuit, because the letter to Wilson did not contain any false recommendation of Baker as a man worthy of credit; that it was not written to defraud the plaintiff, who knew not Addington; that it was never exhibited to or seen by the plaintiff or his clerk; and that the proof varied from the declaration in that the representation, if any was made to the *clerk,* whereas in the declaration it was charged to have been made to the *plaintiff.* The judge refused to nonsuit the plaintiff, and after the testimony was closed, charging the jury that although the statements in the letter from Addington to Wilson were true, the action was sustainable on the ground that the letter did not disclose the truth by communicating the fact of the outstanding judgments against Baker, which Addington should have communicated, and that withholding the truth under such circumstances renders a party equally liable as communicating a falsehood; that withholding such fact was not only evidence of falsehood, but of a fraudulent intent on the part of the defendant to enable Baker to obtain the goods from the plaintiff; that Addington was responsible for the represenations of Wilson, made in consequence of the want of necessary information; that he was so responsible if the plaintiff was moved in giving the credit to Baker by the representations of Wilson notwithstanding other recommendations and references made, operated upon the mind of the plaintiff in inducing him to give credit to Baker; that inasmuch as the plaintiff had the right to

pursue the property while *in transitu*, he was entitled to re- NEW-YORK,
cover, if he was prevented by the recommendation of Wilson, May, 1831.
from pursuing the property after it was delivered on board the Allen
vessel, the same as if he had originally been induced to sell v.
or deliver the goods by reason of such recommendation. The Addington.
counsel for the defendant requested the judge to charge the
jury, that to entitle the plaintiff to recover, there must be not
only a false representation, but some deceit must be practised
for the purpose of throwing the plaintiff off his guard. Instead
of doing so, he charged that it was enough, if there was a false
representation, with a fraudulent intent : and further instruct-
ed the jury that if they should consider the plaintiff entitled to
recover, he would be entitled not only to the amount of the
goods sold, with the interest of the same, but also to exemplary
damages. The defendant excepted to the charge, and the jury
found a verdict for the plaintiff for $2564,84 damages. The
defendant moved for a new trial, and in arrest of judgment ;
which motions were brought on to argument at the same time.

*W. H. Maynard & D. Selden*, for defendant, insisted that
the principles of the case of *Pasley* v. *Freeman*, 3 T. R. 51,
ought not to be extended, and in support of that proposition,
cited *Ward* v. *Center*, 3 Johns. R. 270. That the law of the
case of *Pasley* v. *Freeman* had been supported in England only
by a constant struggle, and that no action there had been sub-
sequently maintained, but when it had been manifestly shewn
that the intent of the party making the affirmation was to de-
fraud the party injured. That the letter from the defendant
to Wilson cannot be considered to have been written with the
intention to defraud any one, especially the plaintiff. It con-
tains no recommendation; and although Wilson so considered it,
the defendant should not be held responsible for his erroneous
conclusion of its purport. Had the letter been seen by the plain-
tiff or his agent, the credit in question most probably would not
have been given, or at least, not on the strength of the letter.
To render a party liable for deceit, such means must be used
as are likely to impose upon a person of ordinary prudence and
circumspection—to throw him off his guard on a point where
he might reasonably place confidence in the representation.

NEW-YORK, made. 1 Starkie's R. 61. 12 East, 631. 2 Starkie's Ev. 467.
May, 1831. There is nothing in this letter calculated to mislead or deceive ;
it is a general letter of introduction, and no case has as yet been

Allen
v.
Addington.

decided where even on a general letter of recommendation an action has been sustained ; it has always been required that an intent to defraud the party injured should be shewn. The judge erred in his charge to the jury. The credit to Baker was given as much on the strength of the letter of Hickcox as on that of the defendant, if not more so ; and where injury arises partly from one source and partly from another, the action does not lie ; the damage must be the natural consequence of the wronful act imputed to the defendant. 8 East, 1. 19 Johns. R. 228. The doctrine of stoppage *in transitu* is totally inapplicable to the case, and the jury were misled by reference to it, 1 Esp. 290 ; so also they were misinstructed on the subject of damages. 8 East, 1. 2 Starkie's Ev. 872. 13 Johns. R. 402. 19 id. 228. 3 Wendell, 291. Proof of an affirmation to the *clerk*, does not support a declaration stating the affirmation to have been made to the *principal*. 2 Chitty, 278. 2 East, 92. 3 Bos. & Pul. 367. 9 Cowen, 578. The two last counts contain no averment of a false allegation by the defendant.

*B. F. Butler & S. P. Staples*, for plaintiff. The decision in *Pasley* v. *Freeman* is based upon the plainest principles of natural justice and universal jurisprudence ; and though in *Ward* v. *Center*, Van Ness, J. appeared disposed to fix a limit to the action, this court in subsequent cases have fully recognized and sanctioned the doctrine of *Pasley* v. *Freeman*. See 6 Johns. R. 182 ; 8 id. 19 ; and 13 id. 224. See also 2 Kent's Comm. 384. A false representation may be made, not only by a direct affirmation, but by any thing which produces the effect to deceive. The fact that the greater part of the circumstances alluded to in the letter were true, was calculated effectually to promote the deception. Wilson understood the letter as desiring him to recommend Baker, and what he said was in strict conformity to its purport ; the impression made upon his mind he had a right to communicate, and if the letter was written with a fraudulent intent, the defendant is liable. Recoveries have been had more frequently for the suppression of facts than for

the affirmation of falsehoods. 3 Johns. R. 270. 6 id. 181. 13
id. 325. 3 Bos. & Pull. 372. It is not necessary there should
be an intent to defraud some particular individual ; if there
was a general intent to defraud, it is enough to charge the
party. If injury ensues to any one, the writer is liable for the
consequences, 6 Vesey, jun. 192; if the intent be fraudulent,
though not pointed at the party injured, the action lies. 13
Vesey, 132. The case in 2 Day's R. 205, goes further than
the case at bar ; there the persons recommending were not
requested to do so ; here Wilson must be considered as the
agent of the defendant. Paley on Agency, 190, 5, 6. It was
not necessary that the letter should have been exhibited to the
plaintiff ; he might rely on the representation of Wilson, he
not having gone beyond the letter. Nor was it necessary that
the representation should be alleged to have been made to the
clerk ; had it been so alleged, the declaration would have
been good, but it was not necessary ; as well in every case
of contract with an agent might it be required that the fact of
the contract having been made with him should be stated ;
even in cases of *tort* it is not necessary, 1 Ld. Raym. 264; 6
T. R. 649 ; besides, if there was a variance, the evidence
should have been objected to. All the counts are good ; each
alleges fraud and deceit on the part of the defendant, and da-
mage or injury on the part of the plaintiff, although the *modus
operandi* is not stated in each ; it is denied, however, that
it is necessary to set forth the means. Willes, 577. 2 Chitty,
404. 1 Day, 183. The two last counts are good by refer-
ence to the first, and by the general conclusion. 1 Chitty,
398. The sound sense of the rule on this subject is, that if
the evidence applies to one good count, the judgment will not
be arrested, although some of the counts be bad. 1 Johns. R.
505. 15 id. 381. 9 Cowen, 152. The charge of the judge
was substantially correct; but if erroneous on any particular
point, the plaintiff being entitled to recover, the verdict will
not for that cause be set aside.

*By the Court,* SAVAGE, Ch. J. To aid in determining whet-
her any cause of action is stated in this declaration, it will be
useful to look at the cases which have been decided, and

NEW-YORK, see what principles relating to this object have been settled.
May, 1831. The first adjudged case upon this subject is *Pasley* v. *Free-*
Allen *man*, 3 T. R. 51, which was an action in the nature of a
v. writ of deceit. After verdict, a motion was made in arrest;
Addington. the third count was like the first in this declaration, which is
conceded to be good in form and substance. The point decided
in that case is, that a false affirmation, made by the defend-
ant with intent to defraud the plaintiff, whereby the plaintiff
sustains damages, is the ground of an action on the case, in
the nature of a deceit. It is not necessary that the defendant
should be benefitted by the fraud, or that there be collusion
between the defendant and the person benefitted. The judges
gave their opinions *seriatim.* Grose, justice, contended that
the action could not be sustained ; which he stated to be
brought against the defendant for telling a lie respecting the
credit of a third person, with intent to deceive, whereby
the plaintiff was damnified. Buller, justice, says : " I agree
that an action cannot be supported for telling a bare naked
lie," which he defines to be saying a thing which is false, know-
ingly or not, without any design to injure or deceive any
person ; but a deceit is more than a lie, on account of being
connected with some dealing, and the injury which it is calcu-
lated to occasion to another person. Ashurst, justice, says :
" In order make it (a lie) actionable, it must be accompanied
with the circumstances that the defendant, intending to deceive
and defraud the plaintiff, did deceitfully encourage and per-
suaded him to do the act, and for that purpose made the false
affirmation, in consequence of which he did the act." Lord
Kenyon also concurred, and remarked, as to this particular
point, that it was contended that the action could not be main-
tained for telling a naked lie ; but that proposition is to be ta-
ken *sub modo.* If indeed no injury is occasioned by the lie, it
is not actionable ; but if it be attended with damage, it then
becomes the subject of an action. He emphasizes that the
defendant fraudulently, and with design to deceive the plain-
tiffs, made the false information, by which the the plaintiffs sus-
sustained damage : and concludes by saying that the action is
maintainable, on the ground of deceit in the defendant, and
injury and loss to the plaintiffs. This decision was made in
1789, and it seems that the principles upon which an action of

deceit is founded had not before been applied to such a case. The case, however, seems to have been approved by the bar; for Lord Eldon informs us, in *Evans* v. *Birknell*, 6 Ves. 186, that though he doubted the principles of it, and when chief justice of the common pleas, offered counsel the privilege of making a special verdict, yet that offer was uniformly rejected. Such was the hostility of this learned judge to the principle of this case, that though he could not prevail on counsel to make a special verdict for the purpose of reviewing the principle, yet he took pains to impress upon the jury the danger of finding verdicts upon such principles, and so far succeeded that the plaintiffs in such actions seldom obtained verdicts before him. He speaks of this as of frequent occurrence. There must therefore have been many such actions brought, for Lord Eldon was only about two years chief justice of the common pleas, before his appointment to the office of lord chancellor; and he took occasion as soon as he left the common pleas, before a term had intervened, to repudiate the doctrine of that case. This was in July, 1801. In November of the same year the case of *Haycraft* v. *Creasy*, 2 East, 92, came on in the king's bench. The declaration charged the representations to be false, fraudulent and deceitful. On the trial before Lord Kenyon the representations were proved, but it was shewn to the jury that the defendant was the dupe of the artifices of the person he had recommended, and strong evidence to shew that there had been no fraud on the part of the defendant. After a verdict in favor of the plaintiff, a motion was made for a new trial, on the ground that there was no fraud or deceit in the defendant, but that he in fact believed the representations he made to be true; and that without fraud the action was not maintainable, though the representation turned out to be false. Before the decision of this case, changes had taken place on the bench; Mr. Justice Buller had been transferred to the common pleas, and Lawrence, justice, in that court took the place of Buller. Ashurst, justice, had resigned, and Le Blanc was appointed in his place. Lord Kenyon and Mr. Justice Grose remained, and they retained the same opposite opinions which they had expressed in *Pasley* v. *Freeman*. Lord Kenyon seemed inclined to go farther, and held it fraudulent in the defendant to assert positively of his own knowledge,

NEW-YORK, May, 1831.

Allen
v.
Addington.

that which he did not know to be true—the solvency of Miss Robertson, the person credited upon the defendant's recommendation.  Grose, justice, admitted the authority of *Pasley* v. *Freeman*, although he could not understand the principle upon which it was decided, but held that as fraud was the foundation of the action, and as there was no evidence that the defendant meant to assert a falsehood, and thereby mislead the plaintiff, there was no fraud in the transaction.  Lawrence and Le Blanc concurred with Grose, justice, that there was no fraud in the defendant's representations, and that to support the action, the representation must be made *malo animo*.  The doctrine established by these cases is, that in order to subject a defendant to damages for a false representation as to the credit of a third person, the representation must not only be false, but fraudulent, with intent to deceive.

In *Scott* v. *Lara, Peake's cases*, 226, at *nisi prius*, Lord Kenyon decided that to subject the defendant to an action by the plaintiff, the defendant must make the communication for the purpose of imposing upon *the plaintiff*, and that the plaintiff relying upon the *information so received*, sustained an injury.

In *Eyre* v. *Durnsford*, 1 East, 327, it was held that a person inquired of as to the circumstances of another, is not bound to give any answer ; but if he answers the inquiry, he is bound in justice and common honesty, to give a fair representation of what he knows.  Fraud may consist in the suppression of the truth, as well as in the assertion of a falsehood ; and the action lies in either case, if the intention to deceive exists, and is the cause of the suppression of the truth, or the assertion of the falsehood.  And in *Burton* v. *Loyd*, 3 Esp. R. 207, Lord Kenyon said the action was founded on all the moral rules which ought to govern society ; that when a character was asked of any man in trade, to whom the party inquiring was about to give credit, all the circumstances within the person's knowledge ought to be stated, and the party left to judge for himself, whether he would give credit or not.  In *Hamar* v. *Alexander*, 5 Bos. & Pul. 241, it appeared that the false representation was made with a view to obtain goods upon credit, and that they might be consigned to a house in which the defendant was connected.  Sir J. Mansfield thought it a case

upon which an action should be maintained, if *Pasley* v. *Free-man* had never been decided. This was the case of gross fraud.

The first case in this court was that of *Ward* v. *Center*, 3 Johns. R. 271. There the defendant had said to the plaintiff's *clerk* that one Brown was a responsible man, worth $5000 ; that he had been punctual in his payments as far as he, the defendant, had had dealings with him. On this recommendation the clerk sold the goods to Brown. The defendant did not communicate the fact that he had a bond and warrant to confess judgment for upwards of $2000. It was proved that judgment was entered on this warrant a few days after the sale of the goods, an execution issued, and the goods levied on and sold. Before the goods were sold, the plaintiff stated to the defendant that he had falsely recommended Brown, and offered to take back the goods, which was refused. After a verdict for the plaintiff, a motion was made for new trial, on the ground that the verdict was against evidence. Van Ness, justice, seems to doubt as to the correctness of the case of *Pasley* v. *Freeman;* but the motion was denied, on the ground that the defendant did not communicate the fact of his having a bond and warrant to confess judgment. Spencer, justice, expressed himself satisfied with the verdict. The case of *Upton* v. *Vail*, 6 Johns. R. 181, brought before the court directly the question whether the action would lie. In that case Upton, the defendant in the court below, had a judgment bond against one Brown, and went with him to Vail, to whom he re-commended him to be as good as any man for the amount sold to him ; about two weeks after, Upton issued an execution, and sold all Brown's property, and among the rest the property purchased of Vail. A recovery was had by Vail against Upton in the court below, and that judgment was affirmed in this court. Kent, Ch. J. delivered the opinion of the court, and after referring to the English cases, expresses his decided ap-probation of the principle on which the action is sustained, and adds : " But independent of the English cases, I place my opinion upon the broad doctrine that fraud and damage coup-led together will sustain an action. But the simple fact of misrepresentation, unconnected with fraudulent design, is not

sufficient.   8 Johns. R. 25.   In *Gallager* v. *Brunel*, 6 Cowen, 350, the general principles on which this class of cases rest are recognized.   Mr. Justice Woodworth cites, with appro- bation the language of Lord Erskine, in 13 Vesey, 131, that there must be knowledge at the time of the falsity of the affir- mation; that is the sound principle.   It must therefore be con- sidered settled, both in England and in this state, that an ac- tion lies for a false recommendation of a third person, by which the plaintiff sustains damage, provided such recommendation be made with an intention to deceive and defraud the plaintiff. Such information must be communicated to the plaintiff, and must be relied on, and cause the damage.   The false repre- sentation may consist in the suppression of the truth, as well as in the assertion of a falsehood.   From many of the cases it seems a communication to the clerk or agent of the plaintiff is the same as if directly made to the plaintiff in person.   It is not essential that the person making the false affirmation is to be benefitted by the fraud.   Nor is it neceesary that the inten- tion should exist, to defraud the plaintiff in particular.   If a person intending to defraud somebody gives a general re- commendation of credit to an insolvent person, any one who sustains damage by reason of such recommendation, is en- titled to an action for such damage, grounded upon the fraud. This is upon the same principle as the case of the squib, 2 Black. 892, which having passed throug several hands before the plaintiff lost his eye, yet he sustained an action against the person who first put it in motion.   Within these prin- ciples it seems to me that all the counts are good.   It be- comes necessary, therefore, to inquire whether the facts pro- ved support the declaration, or either count in it, and render the defendant liable for the damage which the plaintiff has sustained.

The evidence in support of the allegations in the declara- tion consists of the letter, and the circumstances which shew the fraudulent intention.   So far as the letter purports to state facts it is not denied but what they are truly stated; the fact that the defendant had purchased Baker's beef, was true; the fact that Baker had been a merchant some years at Aurora, was also true, though his mercantile business had not been

very extensive, nor of long duration; the fact that he had

bought his goods at Buffalo, Utica and elsewhere, was also true; the fraud, if any, consisted in suppressing facts which were material to be communicated to a person about to sell goods to B. on credit, or to any one who was to give him assistance in buying goods. The fact that the writer of the letter had *three judgments* against Baker was not communicated, though they may perhaps be excused on the ground that these judgments were nearly or quite satisfied by the beef which was purchased of him; the fact that Baker was indebted in a large amount for the goods which he had previously purchased was not communicated; the fact that Baker never had any capital except what the defendant had furnished, and kept constantly covered by securities which would take preference of other creditors, was not mentioned; the fact that Baker was his nephew is not communicated—he calls him an acquaintance; the fact that so embarrassed were the circumstances of Baker, that difficulty was anticipated in his passage through Albany with his goods from New-York; and above all, the knowledge which the defendant seems to have had that Baker must fail. He of course would not communicate the fact that Baker went to New-York by his, the defendant's, advice, to purchase all the goods he could on credit, because he might as well fail for something as nothing, and because in that way the defendant expected to get his pay, and that Baker would still have enough left with which to compromise with his creditors. Independent of the testimony of the three witnesses who proved the declaration of the defendant in this particular, there were material facts suppressed in the letter to Wilson. Had Wilson, instead of the plaintiff, sold the goods to Baker, the letter, with the explanatory circumstances, would have placed his right to recover against the defendant beyond all doubt. It must be conceded, therefore, that there was fraud enough in the defendant's representations to subject him to an action. It is true that the defendant says not one word about *buying on credit*, and the letter may admit of two constructions: When he asks Wilson to aid Baker "in the way of buying," it may be said that it was expected Wilson would advise Baker what goods to purchase, but that, Wil-

son could not do ; he was not as good a judge on that subject as Baker. Wilson dealt in provisions ; Baker wanted dry goods and groceries. The aid, then, must have been either to inform Baker where goods could be purchased, or to facilitate the purchase itself. A man with money in his pocket would need no aid in the city of New-York to find the goods he wanted ; but if his object was to purchase on credit, then aid was very important. Baker was aware of this, for he procured letters of recommendation from Mr. Hickcox ; but if he speaks the truth, he took none from his uncle, the man who had set him up and sustained him in business. He even says he did not know the contents of the letter to Wilson ; if this is so, that fact may raise a suspicion that such ignorance was intentional. Baker stands in a suspicious situation ; it is in evidence that he made false statements to Havens ; and when his testimony is contradicted by others, he ought not to be believed, and probably was not believed by the jury. He swears that the letter was not delivered to Wilson till after the purchase was complete, and the goods delivered. Havens and Wilson both contradict him in this respect. Havens says he had two conversations with Wilson, when the letter was mentioned ; these conversations took place in consequence of a reference by Baker to Wilson and Wilson knew nothing of Baker but from the letter. It would have been idle, and not only so, but suspicious, to make a reference to a man who had no means of giving a recommendation. There can be no doubt that the letter was delivered before the reference was made. In view of all these facts and circumstances, I think the jury were justified in finding that there was fraud enough in the defendant to make him liable to an action. But it is also necessary to inquire whether the plaintiff has sustained an injury by means of that fraud. On that point, Havens, the plaintiff's clerk, swears that he would not have sold Baker the goods but for the recommendation of Wilson ; yet he never saw the letter, and he or the plaintiff did see Hickcox's letter. He states that Baker's telling him that he had beef coming had considerable influence, but he did not inquire of Wilson how that fact was ; and had he read the letter he would have seen that the beef was Addington's, and that Baker had not told the truth. The jury believed that

the credit was given upon the strength of this recommendation, and it can hardly be doubted but the letter was written with an intention that Wilson should procure credit for Baker for the goods which he should purchase. The subsequent conduct of the defendant in aiding Baker through Albany by advancing money, and his subsequent levy on the goods and sale, and putting Baker again in possession as his agent, leave little doubt that the effect was such as the cause was intended to produce. My conclusion on the whole case is, that the evidence was sufficient to justify a verdict on the ground of fraud in the defendant, and damages to the plaintiff caused by that fraud.

The judge in his charge stated that the facts set forth in the letter were true ; but that this action was founded on a fraudulent concealment of other facts, and a fraudulent intent to enable Baker to obtain goods. That the defendant was liable for Wilson's recommendations, which were given for want of correct information. In this I think the judge was correct. If the defendant meant any thing by his letter, it was to enable Wilson to aid Baker in procuring goods on credit ; he was bound, therefore, to give him all the information, which would enable him to judge whether Baker could be safely trusted. He knew that Wilson had no goods to sell, such as Baker wanted ; he therefore vitually constituted Wilson his agent to give to others the information contained in the letter, as embracing all the facts which ought to be communicated to a merchant about to sell goods to Baker on credit. In my opinion the judge was correct, too, in telling the jury that though other recommendations had influence on the plaintiff's mind, yet if the recommendation of the defendant through Wilson was that which procured the credit, the plaintiff was entitled to recover.

I am inclined to think the doctrine of stoppage *in transitu* has nothing to do with this case ; but as the plaintiff's right of recovery is sustained upon other grounds, what was said on that subject did not prejudice the defendant. The ground assumed by the judge in answer to the application of the defendant's counsel, is the doctrine sustained by all the cases—that a false representation with a fraudulent intent is enough, when it appears that the plaintiff relied on that representation, and

Vol. VII. 4

NEW-YORK, May, 1831.

Allen v. Addington.

was deceived by it. The rule of damages laid down to the jury is not objectionable. It is not the value of the goods only that a jury are authorized to give in a case like this; damages are given, as well to compensate the plaintiff, as to punish the fraud of the defendant. I cannot say that the damages in this case are excessive. On the whole, therefore, I am of opinion that a new trial should be denied.