BOYD'S EXECUTORS *v.* BROWNE.

If one, in whom confidence is placed, in introducing and recommending a third person as one worthy of credit, knowingly make a false representation, or wilfully suppress material facts within his knowledge, in relation to the credit and circumstances of such person, by and through which goods are sold to the person recommended, and a loss is thereby sustained; the person recommending is responsible in an action on the case, as for a fraudulent deceit.

False representations, either by the assertion of a falsehood, or by the suppression of the truth, in relation to the credit and circumstances of a third person, is sufficient to sustain the action: where it appeared that the party injured relied and acted upon the representations, and was deceived, although there may have been no collusion or intent to deceive or defraud.

In an action on the case, for false and fraudulent representations, the party to whom credit is given in consequence of such representations, is a competent witness for the party injured.

In error from the Common Pleas of Northumberland county.

*July* 27. This was an action on the case *sur deceit*, brought by William H. Browne and Co., against William R. Smith and Alexander Jordan, executors of John A. Boyd, deceased, to recover damages for false and fraudulent representations made by the defendants' testator, as to the credit of a third person.

It was alleged in substance, in the declaration, that John A. Boyd, falsely and fraudulently recommended one John B. Miller as a person worthy of being trusted for merchandise, and thereby induced the plaintiffs to sell him goods on credit to the amount of $389; when at the time of such representations, the said Miller was not worthy of credit; that Boyd knew his representations to be false, and that Miller was at that time greatly indebted to him and various other persons, and in bad circumstances; that no part of the goods sold by plaintiffs had been paid for, and that the said John B. Miller was, and still is, wholly unable to pay for the same. It appeared from the evidence given on the trial, that in 1838, John A. Boyd, the defendant's testator, was the owner of a store in the town of Northumberland, and that he induced one John B. Miller to purchase the same, through promises of a long credit, and assistance in selling off the old stock and in replenishing the same from time to time. At the time of this purchase, Miller was not considered a man of any property. Boyd gave Miller ten years to pay for the old stock purchased from him, promised to keep him afloat and to show him how to pay for it. After taking an inventory, *by himself*, (refusing to permit Miller to be present,) of the old stock, Boyd went to Philadelphia, *alone*, purchased goods to the amount of $950, which were received, unpacked, and placed upon the shelves. He then took in payment of his old stock of goods, Miller's note for $500, and his judgment bond for $2000, payable in five yearly instalments, with interest from October 3, 1838. The next spring, $700 was got out of bank, and about $300 collected, when Boyd took Miller with him to Philadelphia. They went to those houses of whom Boyd had bought goods and made bills, on the occasion of his former visit to the city, paid off those bills, and Boyd recommended Miller to those merchants. *To Browne & Co., the plaintiffs, Boyd represented Miller as a sober, industrious man, worthy of credit and able to pay,* and also said, that he had sold Miller his stock of goods, that Miller wanted assistance, was not a judge of goods, and that he, Boyd, had come down with him *to recommend him.* When they got home and the

goods arrived, Boyd marked the goods as he did on the former and every subsequent occasion; and the goods were renewed from time to time, by purchases in Philadelphia made in the same way. Boyd always went to the city with Miller to purchase goods. The last purchase was in the fall of 1841.

It also appeared, that at this time, Miller, besides his indebtedness to Boyd, and Browne & Co., the plaintiffs, was also indebted to two other mercantile houses in Philadelphia, for goods purchased of them, to a considerable amount, and also to the Bank of Northumberland, in the sum of $1500. It appeared by the testimony of all the witnesses examined, and who knew Miller and lived in the same town with him, that he was not considered a responsible man; that although he owned two small houses in Northumberland, worth about $800, he could not have paid for his first bill of goods; that he owned these houses when he purchased Boyd's stock, and that from the business relations which subsisted from that time, between Boyd and Miller, the former must have been perfectly acquainted with the circumstances of the latter; that Boyd was frequently at the store every week, went behind the counter, examined the books, posted them up, and appeared to have the management of Miller's business; that every time they went to the city, money was borrowed to pay off the old bills; and that, in 1841, Miller's indebtedness was much more than he had the means to pay. *In November*, 1842, *Boyd wrote to Browne & Co., the plaintiffs, that Miller was abundantly able and willing to pay all his debts.* On the 12th of July, 1843, he entered up his judgment for $2000, on which there was then due $2570. On the 20th of July, 1843, it was testified, Miller wanted to confess judgment to Strawbridge & Borden, one of his Philadelphia creditors, but Boyd would not permit him, and got Mr. Greenough to enter an appearance. On the 2d of September, 1843, judgment was entered in favour of the Northumberland Bank, for $950. *Boyd was the endorser of the note on which this judgment was entered.* On the 16th of September, 1843, Miller confessed judgment in favour of Strawbridge & Borden for $219. Previously to this, to wit: in June, 1842, Miller confessed a judgment to Brautigum & Waples, merchants in Philadelphia, for $95, and when Boyd was informed of this, *he said it was taking too much of him, Boyd.* On the 27th of September, 1843, Miller made an assignment to Boyd, of all his property, real, personal, and mixed, for the benefit of his creditors. His real and personal estate, including notes, book-accounts, judgments on the

| | | | | |
|---|---|---|---|---|
| dockets of justices, was appraised at | . | . | . | $4311 90 |
| The real estate was valued at | . | . | $1350 | |
| The goods at . . . . | . | . | . 450 | 1800 00 |

Leaving   .   .   .   .   .   .   .   . $2511 90

in judgments, notes, and book-accounts. John A. Boyd, the assignee, sold the real estate under judicial process, for $1185, and became the purchaser himself. He lived until 1845; but no account was ever given or rendered of the proceeds of the personal property, including the judgments, notes, book-accounts, &c. It did not appear that the plaintiffs, or the other creditors in Philadelphia and Northumberland county, were ever informed by Boyd of Miller's indebtedness to him in the sum of $2500, for his old stock of goods.

At the trial, before ANTHONY, P. J., the plaintiffs offered John B. Miller, the purchaser of the goods, and their debtor, as a witness. The defendant objected to him on the ground of interest. but the court overruled the objection, and sealed defendant's *first* bill of exception. John B. Miller was then sworn and examined as a witness. In the progress of the examination of the witness, the plaintiffs offered to prove by him, that "whilst John A. Boyd and witness were in the city purchasing the last bill of goods, Boyd stated to witness, that he, *Boyd*, had made witness's credit so good in the city, that he could purchase $10,000 worth of goods without a cent." The defendants objected, but the court overruled the objection and sealed defendant's *second* bill. The witness then testified, that after they had made their purchases, a few gentlemen came to the Red Lion, where he and Boyd lodged, and left their cards of merchandise with him, requesting him to come round and look at them, and stating that they would sell to him as reasonably as any one else, *at six months' credit.* I said to Boyd, (after the gentlemen had left,) I do not know these men; how comes it that they know me? Why do they want to sell me their goods, on these terms and credit? *Boyd said, they know you, through me. I was round to see them the other day, and they want me to bring you to see them. I have made your credit good for a large amount, for $10,000,—and then laughed heartily.* On the cross-examination of witness, the defendant proposed to ask him, whether at the time he purchased the stock of goods of Boyd, or at any time afterwards, it was his intention to defraud the plaintiffs or any other creditor who trusted him. The plaintiffs objected to the question, because intention was immaterial, &c. The court sustained the objection, and sealed the defendant's *third* bill. After the

witness had stated, that Boyd promised to assist him in paying for his, *Boyd's*, stock of goods, and advised him, as he was a tailor, to make up some of the goods into clothing, by which he would make money; the defendants proposed to ask him as follows: "What passed between you and Boyd, when you made the purchase of his stock, as to the mode of making money out of that purchase, by making up clothes or by any other means?" This was objected to by the plaintiffs, but the court overruled the objection and sealed a bill of exception. The witness then stated in answer to the question, "that there were a great many moth-eaten cloths, some had twenty holes, many calicoes and nankeens damaged. I found fault with them, said they were not saleable. Boyd said, you have hands, you can cut out and make clothes; do this, and you will make money, and I will keep you afloat for ten years and assist you, and go to Philadelphia for you, and so he did." The defendant then proposed to ask witness the following question: "Did you believe, when you bought the last bill of goods in Philadelphia in October, 1841, that you were able to pay all your debts, and that your property, with the debts then due to you, were abundantly sufficient for that purpose?" Objected to and objection sustained. This was defendant's *fourth* bill. The defendant then proposed to ask witness the following question: "Did not Mr. Greenough say to you at the time you called on him, through the urgent request of Boyd, and gave him a statement of the occurrences which had taken place from the time you purchased Boyd's stock, in connection with your circumstances and situation from that time to the present, *that if the facts were as you stated them, plaintiffs had no claim against Boyd?* Objected to, and objection sustained. This was defendant's *fifth* bill. After the evidence was closed, the defendant requested the court to instruct the jury as follows:—

1. That if they believe John A. Boyd recommended John B. Miller to the plaintiffs as a person worthy of credit, and able to pay; yet if he did so with a full and perfect belief that the fact was as he represented, (although afterwards it turned out otherwise,) such mistake was not a fraud; and in that case Boyd is not liable in this action.

2. That deceit or fraud is the foundation of this action. And if John A. Boyd stated nothing but what he believed to be true, although his statement might be untrue in fact, yet if he had no intention to deceive, and was in an unintentional error himself, he is not liable in this action.

The court (ANTHONY, P. J.) concluded their charge as follows:

"The only questions in this case are, whether Boyd knowingly misrepresented the situation and standing of Miller to plaintiff, and whether they were induced, by his misrepresentations, to trust Miller with goods, and in consequence thereof trusted a man who was, and is, unable to pay for those goods. If you believe Boyd did so, his estate is liable. 'Honesty is always the best policy.' If a man, in whom confidence is placed, suppress the truth when he recommends his friend to merchants, and that suppression of truth induces them to trust his friend, and causes loss and damage to those merchants, he is equally liable to pay the damage as if he had suggested a positive falsehood.

"This cause is one of importance as regards principles; but the facts are not seriously controverted; and I cannot perceive that it is one of much difficulty. The jury will, however, decide the facts, and give such verdict as their conscience will approve. If you find for the plaintiff, your verdict should be for the amount of the Miller note of $389 94 and interest; deducting the $23 35 endorsed as paid thereon. But if you find for the defendant, your verdict will be generally for the defendant." Defendants excepted to the charge.

*Answer of the court to defendant's points :—*

1st point. That if John A. Boyd recommended John B. Miller to the plaintiffs, as worthy of credit and able to pay, and the jury are satisfied that Boyd fully and perfectly believed that he was stating the whole truth to the plaintiff about the credit and ability to pay, of John B. Miller; then Boyd's mistake would not be such a fraud as would make him liable in this action, if it turned out afterwards that he was mistaken. But if Boyd knowingly suppressed the truth from, or suggested a falsehood to, the plaintiffs, in relation to the credit and ability of John B. Miller to pay, and such suppression of truth or suggestion of falsehood induced the plaintiffs to trust Miller for goods upon Boyd's recommendation, and it turned out that Miller was unable to pay for them, then the plaintiff can recover in this action.

2d point. That deceit or fraud is the foundation of this action. John A. Boyd, in recommending John B. Miller, was bound to state the truth. If he was unintentionally mistaken in what he said to the plaintiff about Miller's credit and ability to pay; if he believed at the time that he was stating the whole truth to them, an unintentional error would not make him liable in this action. But if Boyd knew that he was not telling the plaintiffs the whole truth; if he suppressed the facts, that he had not received one

dollar from Miller when he sold him the store-goods, and that he held Miller's note for $500, and his judgment bond for $2000, then such suppression of the truth would make Boyd liable; if, by such suppression of the truth, the plaintiffs were induced, by the recommendation of Boyd, to trust Miller for goods.

Defendants excepted to the charge; and, after verdict, sued out this writ of error, and assigned the following errors here:

1. The court erred in their decisions on the first, second, third, fourth, and fifth bills of exception to evidence.

2. In their answers to defendants' points.

3. In telling the jury that plaintiff's recovery in this action would not discharge John B. Miller.

*Greenough*, for plaintiff in error.

*Hegins* and *Bellas*, contrà.

*July* 27. BELL, J.—We see nothing exceptionable in the charge of the court. The principles upon which this peculiar action is based were correctly stated, and the facts fairly put before the jury. The ground of action is the deceit practised upon the injured party; and this may be either by the positive statement of a falsehood, or the suppression of material facts, which the inquiring party is entitled to know. The question always is, did the defendant knowingly falsify, or wilfully suppress the truth, with a view of giving a third party a credit to which he was not entitled. It is not necessary there should be collusion between the party falsely recommending and he who is recommended; nor is it essential, in support of the action, that either of them intended to cheat and defraud the trusting party at the time. It is enough, if such has been the effect of the falsehood relied on. Misrepresentations of this character are frequently made from inconsiderate good nature, prompting a desire to benefit a third person, and without a view of advancing the party's own interests. But the motives by which he was actuated do not enter into the inquiry. If he make representations productive of loss to another, knowing such representations to be false, he is responsible as for a fraudulent deceit. These doctrines are fully established by the cases of Haly *v.* Free, 3 Term Rep. 51; Foster *v.* Charles, 6 Bing. 369; same case, 7 Bing. 105; Corbit *v.* Brown, 8 Bing. 33; Allen *v.* Addington, 7 Wend. 9. In Foster *v.* Charles, when it was first in Westminster Hall, Tindal, C. J., said, "It has been argued that it is not sufficient to show that a representation 'on which a plaintiff has

acted was false within the knowledge of the defendant, and that damage has ensued to the plaintiff; but that the plaintiff must also show the motive which actuated the defendant. I am not aware of any authority for such a position; nor can it be material what the motive was. The law will infer an improper motive, if what the defendant says is false within his own knowledge, and is the occasion of damage to the plaintiff." All the other judges fully concurred in the soundness of those views, and indeed they recommend themselves by their intrinsic merit. But that part of the instruction chiefly complained of here is the direction to the jury, that the suppression of the fact by Boyd, that he had taken securities for large amounts from Miller in payment of the merchandise sold by Boyd to him, was evidence of fraud and deceit. The soundness of this opinion is fully shown by the authorities, and particularly by Corbit *v.* Brown, 8 Bing. 33; Allen *v.* Addington, 7 Wend. 9, and Ward *v.* Centre, 3 Johns. Rep. 271. It is scarcely necessary to add, that in the case at bar there was abundant evidence, if believed, to establish the fact that Boyd took more than ordinary pains to inculcate a falsehood, which he must have known was untrue, for the purpose of inducing plaintiffs to credit Miller. But it is supposed the latter was not a competent witness to prove the fact. In this position, however, the plaintiffs in error are mistaken. This action is not brought to recover the debt due from Miller to the plaintiffs below, but is collateral to it, and for the recovery of damages to punish the deceit practised. A recovery had in it will therefore leave Miller's liability, as debtor, untouched and still subsisting. For these reasons all the authorities agree, the debtor is a good witness for the plaintiff; Richardson *v.* Smith, 1. Camp. 277; Smith *v.* Harris, 2 Stark. Rep. 47; Brant *v.* Robinson, Ry. & Moo. 48; Burden *v.* Lloyd, 3 Esp. Rep. 207. There is nothing in the remaining bills of exception. As to the *second*, it is sufficient to say, the statement made by Boyd to Miller, at the tavern in Philadelphia, was admissible as part of the history of the case, and as a confession of the pains taken by Boyd to propagate the falsity complained of. Neither the intention entertained by Miller, when purchasing goods, nor his belief as to the value of his property, was of any consequence. We have seen that an intention eventually to defraud is not necessary to the action; and as to the value of the property, the inquiry touched Boyd's belief, and not Miller's. It was open to the defendants below to prove the value of Miller's estate, and this it seems they attempted to do. This is a sufficient answer to the *third* and

2 D 2

*fourth* exceptions. The *fifth* and last bill complains that the defendants were not permitted to prove Mr. Greenough's declaration to the witness of his opinion of the legal effects of the facts narrated by the latter on a former occasion. The obvious object was to discredit the witness. But this was not the way to do it. If the witness's testimony differed in material particulars from his former statement, it was competent to the defendants to show what that statement was, and not what Mr. Greenough's opinion of it was. Of this right they availed themselves, by the introduction of Mr. Greenough as a witness, who, in the course of his evidence, testified as to his former opinion; so that if there had even been error in the before rejection of it, it was subsequently cured.

Judgment affirmed.