## John C. Smith *v.* Robert B. Bowler.

1. A contract for services, not to be performed within the year, can not be enforced, unless reduced to writing and signed by the party to be charged thereby ; part performance for two years will not strengthen a claim for services, originally agreed to be rendered for more than three years.

2. An action for fraud and deceit must be founded on a misrepresentation of an existing fact, and can not be based on a future occurence, or on an act to be done; there must be knowledge, at the time, in the party who is charged with fraud or deceit.

3. In a contract for a performance at a future day, the mental reservation of one party that he will not abide the agreement, can not change its nature or destroy its obligation.   The court must deduce the intention from the acts and conduct of the parties.

4. An allegation, that the defendant has fraudulently prevented the plaintiff from performing the contract, since he has refused to give him a memorandum in writing of its terms, as he had assured the plaintiff he would do, does not raise the implication of fraud or deceit ; for, whether the defendant so refused or not, it does not follow but that the agreement would have been complied with at the time fixed for its performance.

SPECIAL TERM.—On demurrer to petition.   The plaintiff, in the petition, states that in May, 1855, he was employed in a banking-house, in Cincinnati, as book-keeper, at the annual salary of $2,000, with the prospect of advancement.   While thus engaged, the defendant, who was then the leading managing member, and capitalist, of the firm of Carney, Swift & Co., approached him with the offer of a salary of $2,000

per annum, if he would leave his situation at the bank, and connect himself with the last-named firm ; which it is averred the plaintiff promptly declined, on the ground that he would not leave his place unless greater inducements were offered than those already held out to him to remain. After this, and during the same month, he states that the defendant wrote him a note, asking another interview, and intimating that he had a new proposition to make, and so .advantageous that the plaintiff, he believed, would certainly accept it. The interview took place, when the following offer, it is alleged, was made by the defendant, viz : " The defendant to pay the plaintiff $2,000 per annum for his services as book-keeper, to the copartnership of Carney, Swift & Co., which would terminate on the first day of July, 1858 ; and after the expiration of said term, the defendant to give him an interest as partner in a new firm to be formed by the same parties, equal to $5,000 per annum, or to give him a salary of a similar amount for his services to be rendered to the new firm." To secure this, the defendant, it is averred, offered his individual guaranty, but it was not given. This proposition was accepted, and on July 1, 1855, the plaintiff entered the service of Carney, Swift & Co., and continued there until July 1, 1857, when he left their employment because, as he averred, the defendant refused to perform his part of the contract.

The plaintiff then charges that he was induced by the inducements, held out to him by the defendant, of future advancement and a future salary of $5,000, to leave his former employment; that he has frequently demanded of defendant a recognition of the contract for future interest and advancement, and his written guaranty for the fulfillment of his contract, but he refuses to recognize the contract or to give a written guaranty, or any writing on the subject, and denies that any such contract was ever made. It is then averred, that by reason of the false, fraudulent, and deceitful stratagems and devices thus employed by the defendant, the plaintiff was prevailed on to enter the service of Carney, Swift & Co., and abandon his former position, with his prospect of

advancement; and these promises are averred to have been willfully and purposely held out, by defendant, to impose on the plaintiff, without any intention, on the part of the defendant to perform them. For all which he claims damages in $6,000.

*Thomas C. Ware,* for plaintiff.

*George H. Pendleton,* for defendant.

STORER, J. This is an action professedly to recover damages for fraud and deceit.

Several questions have been argued by counsel, which we will now consider:

1. Is the action, brought upon the contract, set forth in the petition; if so, can it be maintained?

The agreement between the parties, which is alleged to have been broken, was not to be performed until the expiration of three years, and it is therefore clear that no action can be sustained, for its non-performance, under section 5 of the Statute of Frauds, etc; Swan, 435.

That section requires all agreements, not to be performed within one year from their date, to be reduced to writing, and signed by the party to be charged. It is a copy of section 4, ch. 3 of the statute 29 Car. II, which has been so often construed by the English courts, and its meaning so universally understood by the profession, that we need but refer to the rule to find its application. Under this construction, it has been held to be immaterial if the agreement was, in fact, part performed or not; if it was not to be completed within the year, it is void; 11 East. 142, *Boydell* v. *Drummond;* 9 B. & C. 392, *Birch* v. *The Earl of Liverpool;* 2 Man. G. & S. 808, *Souch* v. *Strawbridge;* Ib. 835, *Giraud* v. *Richmond.* In this last case, the agreement was very similar to that set up by the plaintiff here: "it was for the services of a clerk, with a stipulation to pay him a salary at the following rates: for the first year £70, second £90, third £110, fourth £130, fifth £150, and the

same sum for following years;" but it was adjudged that the contract was within the statute, and must be put in writing.

The same construction, without an exception, we believe, has been adopted by the American courts; at least, we have found no decision to the contrary.

We conclude, then, if the plaintiff relies upon his contract, he can not recover, as his claim is clearly within the statute.

But it is claimed that the action is one of deceit, and therefore upon the case, on the principle that fraud or deceit, practiced by one party upon another, may well be the foundation for a suit for damages, if an injury has resulted in consequence. In the great case, 3 D. & E. 51, *Pasley* v. *Freeman*, which has, since its decision, ever been regarded as settling the law upon the question it involves, Grose, J., denied the proposition that wherever deceit or fraud was practiced, the law would give redress; but the other judges, Buller, Ashhurst, and Kenyon, decided that in such a case, an action could be sustained. The principle thus recognized, was afterward affirmed, in 2 East. 92, *Haycraft* v. *Creasy;* and in 6 Bing. 396, *Foster* v. *Charles.* In the discussion of the point adjudicated in these cases, much stress was laid upon the fact, that the statute of frauds was virtually repealed, by permitting a party who could not directly defeat its provisions, if an action was brought upon the agreement, to do so indirectly, if the suit assumed the name of an action upon the case; and there would seem to be much reason for the objection, though we can not doubt, in a proper case, the rule will permit the injured party to recover. To show, however, how strictly the principle is guarded, notwithstanding what is considered to be the law, by section 6, chapter 14, of 9th George IV, it is declared: "That no action shall be brought whereby to charge any person upon, or by reason of, any representation or assurance, made or given, concerning, or relating to the character, conduct, credit, ability, trade, or dealings of any other person, to the intent or purpose that such other person may obtain money, goods, or credit, unless such representation or assurance be made in writing, and signed by the party to be charged."

We have referred to the history of the law upon the subject, to ascertain the true ground upon which we may stand, in all cases, where fraud and deceit are the gravamen of the action, and we find what we think is the true principle in 3 Barn. & Adol. 114, *Polhill* v. *Walter*, "it is enough if a representation is made, which the party making it knows to be untrue, and which is intended by him, or which, from the mode in which it is made, is calculated to induce another to act on the faith of it, in such way as that he may incur damage, and that damage is actually incurred." This opinion of Lord Tenterden is quoted with marked approbation, 7 E. L. & Eq., 585, *Watson* v. *Poulson*, and affirmed as the settled law.

But the fraud or deceit must have been upon the assumption that a fact exists or does not exist : There must be an averment that the thing of which the falsehood is affirmed, is then subsisting, or that it has no reality : It can not be referred to the happening of a future event, or any prospective change in the situation of the parties. Hence, if there is no legal ground to repudiate the contract, there can be none to sustain a suit like this.

We can not appreciate the argument which supposes that the non-performance of a contract, the breach of which could not occur until long after the agreement was entered into, can be held to relate back to the time of its inception, and give a fraudulent character to an act which did not then exist; nor can we look forward, from the date of the agreement to the time it is alleged to have been broken, to resolve the conduct of the defendant into fraud and deceit.

We can conceive of no case where the act done does not determine the rights of the parties, when there is no misrepresentation or concealment by either. A false assertion presupposes that an event has occurred, a duty has been performed, an authority exists, or a fact has intervened, either or all of which may have induced the contract, if true, or would have been prevented it being consummated. To anticipate the future and predicate falsehood, upon an

act to be done, or omitted at a future day, would change a mere broken promise into a fraud, on the part of him who was bound to fulfill the engagement; thus practically illustrating the old forms of declarations in assumpit, wherein the defendant was always charged with fraudulently and deceitfully refusing to perform his agreement, whether the suit was upon a bill of exchange or an ordinary evidence of debt.

Such we can not hold the law to be; and in this we are fully sustained by the Supreme Court in New York, in 6 Cowen, 347, *Gallager* v. *Brunel.* It was well said by Colden, who argued for the defendant in that case, that "the plaintiff can not be permitted to turn a mere promise into a tort;" and Woodworth, J., remarked, "If this be an attempt on the part of the plaintiff to get rid of the statute of frauds, I can only say the occasion justified the experiment."

The intention of a party not to fulfill, has not, I believe, ever been considered among the fraudulent acts which, in judgment of law, render a party liable.

The maker of a promissory note may not, at the time, intend to make payment; nay, further, on the strength of his assurances to pay punctually, but never intended to be performed, may have induced the lender to part with his money and accept the borrower's note. All this is criminal; yet the remedy is on the contract. The law has not recognized it as the substantive ground of fraud.

So, in 13 Ves. 131, *Clifford* v. *Brooke*, the chancellor held, "there must be the knowledge at the time." The sound principle is that the defendant, knowing the person to be dishonest, insolvent, and unworthy of trust, made the representation. This is also the ground, upon which *Pasley* v. *Freeman*, and the subsequent decisions upon the same point, to which we have already referred, proceeded. The same principle is held in 6 Johns. 181, *Upton* v. *Vail;* 7 Wendell, 9, *Allen* v. *Addington;* 17 Ohio, 16, *McCracken* v. *West, et al.*

It is urged by the plaintiff's counsel, that the averment in the petition is, that the defendant, when he made the contract, did not intend to comply with it, and, that the demurrer admitting the fact, we must infer there was both fraud and deceit.    Of the intentions of parties, merely, whether formed or unformed, unless they are exhibited by overt acts, we have no cognizance; their supervision belongs to another and higher tribunal.    Until the conduct has unfolded the motive, and presented for our consideration that to which we can apply the legal rule, we have no jurisdiction, and can therefore give no relief.    It has been said, that "a promise never to pay" will be construed to mean an agreement to pay; and if a contract is made, when performance is postponed to a future day, certainly the mental reservation of the party bound to perform, that he will not abide by its agreement, can not change its nature or destroy its obligation.

Neither can we discern, in the very ingenious argument of counsel which has been pressed upon us, to regard the plaintiff's petition as an application in equity, for the specific performance of the contract between the parties.    Granting all that is thus claimed, equity follows the law, and in all cases not referable to sections 1, 2, and 3, of the Statute, where part performance is held to make valid parol agreements for the purchase and sale of lands, the chancellor always refuses relief.    It is alleged, nevertheless, that the defendant has fraudulently prevented the plaintiff from performing the contract, as he has refused to give him a memorandum in writing, of its terms, as he had assured the plaintiff he would do; but we are at a loss to imply fraud or deceit here, and if we did, it would only authorize a prayer to compel the defendant to enter into the stipulation in a formal manner; for whether he refused to do so or not, it does not follow, but that the agreement would have been complied with at the time the new partnership was to commence.

In addition to what we have already said, it seems to us,

the action could not be maintained, if the contract had been in writing. The plaintiff enters the employment of the firm, for which he was engaged by the defendant. He remains with them two years; and one year before the period had expired, when he was to become interested in the prospective partnership, he leaves his employers, alleging no other reason than that the defendant refused to give him a written guaranty, and denied the contract. Now it is very obvious from what has been already said, that we can not anticipate what the conduct of the defendant would be on July 1, 1858, when it is charged the new connection was to be formed. It may be that the plaintiff might then find both a willingness and readiness on the part of the defendant to comply with the contract. Until then, it would seem, that the plaintiff must have been required to remain, if the agreement had been in writing.

Under all the aspects in which we have been able to view the case, we can find no ground to support the plaintiff's action.

Demurrer sustained, and judgment for defendant.