## SUPREME COURT.

BENJAMIN H. MORSE agt. NICHOLAS SWITS and GEORGE G. MAXON.

Every person who makes a *public representation* which *he knows to be false,* and upon faith in which any one has been led into a business transaction, and *acted* upon such false representation to his loss, the party making it shall answer to him for the *damages.* He shall not be at liberty to sow *falsehood broadcast,* without being responsible for the *loss* it causes.

Therefore, where it was alleged that the defendants, the *president* and *cashier* of a *bank,* in making and publishing the quarterly report of the resources and liabilities of the bank, required by statute, made a statement of the condition of

the bank, on a given day, which statement (under oath) was to their knowledge *grossly false*—giving the particular items which were untrue; and the plaintiff upon the faith and relying upon the truth of such statement and report, purchased thirty-six shares of the capital stock of said bank at the par value thereof, when in truth and in fact the capital of said bank was impaired, and on the day mentioned in said report its stock was worth only about thirty cents on the dollar,

*Held*, on demurrer, that the defendants were liable. It could not alter the defendants' liability, that under the statute the defendants made the report to the *bank*, and the bank to the *superintendent* of the bank department, and the latter published it.

The averment in the complaint that the defendants made and published the statement "with intent to deceive and defraud those who might become purchasers and owners of the stock," was not so general, as that the intent was to deceive and defraud the *public* merely, but sufficient to authorize a recovery by the plaintiff.

*Albany General Term, December*, 1859.

Hon. Wm. B. Wright, George Gould, *and* Henry Hogeboom, *Justices*.

This action is brought against the defendants, who are president and cashier of the Mohawk Bank of Schenectady, to recover damages, which plaintiff alleges he has sustained by the false and fraudulent statement and report made and published by them of the condition and resources of the Mohawk Bank of Schenectady, as they existed on the 19th day of June, 1858, the plaintiff having, subsequent thereto, became the owner and purchaser of thirty-six shares of the stock of said bank, at its par value of fifty dollars, which he purchased upon the faith and relying upon the truth of said statement and quarterly report.

The complaint is as follows:

"Benjamin H. Morse, the plaintiff in the above action, by Edward Rosa, his attorney, complains of Nicholas Swits and George G. Maxon, the defendants herein, and thereupon shows to this court, that heretofore, and at the time of the purchase of the stock hereinafter mentioned, this plaintiff was ignorant of the true and actual value of the capital stock of the Mohawk Bank of Schenectady, of the resources and assets of said bank, and of the actual condition thereof; that prior to said purchase said defend-

ants, as president and cashier of said bank, had, in pursuance of the requirements of section 125, title 2, chapter 18, part 1, of the Revised Statutes, of the state of New York, and on or about the 14th day of July, 1858, made and published under their respective oaths, a statement and quarterly report of said bank, as it existed on the morning of June 19th, 1858, which statement and report is hereunto annexed, marked schedule A, and forming a part hereof; that among the items contributing and making up the alleged resources and assets of said bank, in said report and statement contained, is the following:

"Due from banks, $129,389\frac{20}{100}$." And this plaintiff further alleges, that after said publication of said report and statement by said defendants, and in the month of September, 1858, this plaintiff believing said report and statement to be true, and confiding in the same, and believing therefrom that among the resources of said bank was an actual bona fide indebtedness, from banks to said Mohawk Bank of Schenectady, of $129,389\frac{20}{100}$, and being deceived thereby, did purchase thirty-six shares of the capital stock of said Mohawk Bank of Schenectady, at and after the rate of the par value thereof, namely at the sum of fifty dollars for each and every share of said stock, the same being according to said statement and report, the actual value thereof at said time. This plaintiff alleges that, at said time he was ignorant of the falseness of said statement in regard to said indebtedness from other banks to said Mohawk Bank of Schenectady, and of the depreciation of the value of said stock arising from said falseness.

And this plaintiff alleges that there was not due to said Mohawk Bank of Schenectady, on said 19th day of June, 1858, nor at the time that said defendants made oath to said statement and report, nor at the time of the publication of said report and statement, nor at the time of the purchase of said shares of stock by this plaintiff, from

other banks the sum of $129,389$\frac{20}{100}$; nor was there in fact due from other banks to said Mohawk Bank of Schenectady, at said time, and times to exceed $5,000. And this plaintiff alleges that said defendants falsely and fraudulently included in the sum alleged in said report and statement to be due from other banks the sum of about $125,000 from the Mohawk Bank; whereas in truth and in fact there did not exist at either of said times any such bank, nor any indebtedness therefrom—of all which said defendants well knew. That said defendants, by said statement and report, falsely and fraudulently induced this plaintiff to believe, and from such statement and report this plaintiff was induced to believe, and did believe, that the capital of said bank was unimpaired, and its stock worth the par value thereof. Whereas, in truth and in fact, the capital of said bank was impaired at and on said 19th day of June, and on July 14th, 1858, and its stock only worth about thirty cents on the dollar of the par value thereof; and said bank had suffered a depreciation and loss of over $100,000 of its capital stock, all of which said defendants well knew when they made the false and fraudulent report and statement aforesaid, and published the same as aforesaid.

And this plaintiff alleges that said quarterly report and statement so made by said defendants, as president and cashier of said Mohawk Bank of Schenectady, was false in stating that there was due from banks to said Mohawk Bank of Schenectady, on said June 19, 1858, said sum of $129,389$\frac{20}{100}$, and said defendants, as such president and cashier, well knew the same to be false. And this plaintiff alleges that said defendants, as such president and cashier, fraudulently concealed the fact of the loss of the capital of said bank of over $100,000. That said defendants did also in and by such report, falsely and fraudulently state that on said June 19, 1858, said Mohawk Bank of Schenectady was in a sound and healthy condition, and its capital stock unimpaired.

And this plaintiff further alleges and charges that the said quarterly report and statement of the condition and resources of the said Mohawk Bank of Schenectady, was made with intent to deceive and defraud the holders and owners of the stock of said bank, and those who might become purchasers and owners thereof. And the said plaintiff further alleges and charges that he became the purchaser and owner of the said thirty-six shares of the capital stock of the said Mohawk Bank of Schenectady, and paid therefor the par value of said stock, being fifty dollars for each and every share thereof, upon the faith and relying upon the truth of the said quarterly statement and report, as made by the said defendants, of the condition and resources of the said bank; and without any knowledge, or the means of knowing at the time of said purchase that the statement in said report " that there was due from banks" to the said Mohawk Bank of Schenectady, the said sum of $129,399$\frac{20}{100}$, was wholly false and fraudulent.

And the said plaintiff alleges and states that on the said 19th day of June, 1858, or on the day the said plaintiff became the purchaser of said thirty-six shares of said stock at its par value, to wit: the sum of $1,800, the said stock was not worth the sum of thirty cents on the dollar of its par value, and that the said defendants well knew that fact. And the said plaintiff alleges and states that he has been injured by the said false and fraudulent statement and report, as made by the said defendants, as president and cashier of the said Mohawk Bank of Schenectady, of its conditions and resources, and he therefore demands judgment of $1,500 against the said defendants for his damages, besides the costs of the action."

The complaint was duly verified.

" (Schedule A.)

Quarterly report of the Mohawk Bank of Schenectady, on Saturday, the 19th day of June, 1858:

### RESOURCES.

| | | |
|---|---:|---:|
| Loans and discounts | $207,963 | 91 |
| Overdrafts | 5,635 | 54 |
| Due from banks | 129,389 | 29 |
| Due from directors of the bank....$3,024 82 | | |
| Due from brokers | | |
| Real estate | 11,600 | 00 |
| Specie | 12,692 | 95 |
| Cash items, viz : | 1,038 | 37 |
| Stocks, $100,000 ; promissory notes, | 100,000 | 00 |
| Bonds and mortgages | 10,200 | 00 |
| Bills of solvent banks | 5,500 | 00 |
| Bills of suspended banks | | |
| Loss and expense account | 6,177 | 79 |
| | $490,197 | 76 |

### LIABILITIES.

| | | |
|---|---:|---:|
| Capital | $200,000 | 00 |
| Circulation registered...........$83,999 00 | | |
| Circulation not registered | | |
| Total ....................$83,999 00 | | |
| Less notes on hand ............$23,616 00 | | |
| | 60,293 | 00 |
| Profits | 7,803 | 05 |
| Due to banks | 16,461 | 28 |
| Due to individuals and corporations other than banks | 252 | 00 |
| Due treasurer of the state of New York | | |
| Due depositors on demand | 205,388 | 43 |
| Amount due, not included under either of the heads | | |
| | $490,197 | 76 |

George G. Maxon, president, and Nicholas Swits, cashier of the Mohawk Bank of Schenectady, a banking association located and doing business at Schenectady, in said county, being duly and severally sworn, each for himself saith, that the foregoing is, in all respects, a true state-

ment of the condition of said bank, before the transaction of any business on the morning of Saturday, nineteenth day of June, one thousand eight hundred and fifty-eight, in respect to each and every of the items and particulars above specified, according to the best of his knowledge and belief; and that the business of the said bank has been and is transacted at the location aforesaid.

GEORGE G. MAXSON, *President.*

N. SWITS, *Cashier.*

Severally subscribed and sworn
by both deponents, the fourteenth
day of July, 1858.

JAMES M. BOUCK, *Com. of Deeds.*"

"The defendants demur to the plaintiff's complaint in this action upon the following grounds :

1st. That the complaint does not state facts sufficient to constitute a cause of action.

2d. That there is a defect of parties defendant in this, that the Mohawk Bank of Schenectady should be a party defendant."

At a special term of the supreme court, held at the court house at Sandy Hill, on the 8th day of March, 1859, present E. H. ROSEKRANS, *Justice,* after hearing Mr. Beach on the part of the defendants, and Mr. Sherwood on behalf of the plaintiff, upon demurrer to the complaint, judgment was ordered in favor of the defendants upon demurrer with costs : with leave to plaintiff to amend upon payment of $25 costs.

The following opinion was delivered upon this decision :

ROSEKRANS, Justice. It may be assumed (although the fact is not alleged in the complaint,) that the Mohawk Bank of Schenectady was a banking association, organized under the general act, and that the defendant Maxon was president, and the defendant Swits, cashier of the bank. It is averred that the defendants, as president and cashier of said bank on the 14th day of July, 1858, made and

published a quarterly report of the condition of said bank, as it existed on the 19th day of June, 1858, in pursuance of the requirements of section 125, title 2, chapter 18 of part 1 of the Revised Statutes; that this report falsely set forth that there was due from banks to the Mohawk Bank of Schenectady, $129,380$\frac{20}{100}$; that this statement was wholly false to the knowledge of defendants; that it was made with intent to deceive and defraud the holders and owners of the stock of said bank, *and those who might become the purchasers and owners of such stock;* that plaintiff, believing such statement true, and relying upon it, in September, 1858, purchased 36 shares of the stock of said bank at par value, (being $50 per share,) and that said stock was not worth over thirty cents on the dollar of its par value. The defendants demur to the complaint upon the ground, 1st. That it does not state facts sufficient to constitute a cause of action; and, 2d. That there is a defect of parties defendant—in this, that the Mohawk Bank of Schenectady should be made a party defendant. The section of the statute under and in pursuance of which it is averred the defendants made and published the quarterly report referred to, only requires of the president and cashier of a bank that they shall verify by their oaths the quarterly reports of the bank. It contemplates that the report and verification, after the oath is made, shall be delivered to the bank. The bank to forward it to the superintendent of the bank department, *and the superintendent is required to publish the statement in a newspaper printed in the county, city or town where the bank is located.* (2 *R. S.,* 5*th ed.,* 432–3, § 125.) The report is not made or published by the president or cashier, *pursuant to the act.* It is made *by the bank* to the superintendent, and the *publication is by the superintendent.* But, assuming that the president and cashier can properly be said to have made and published the report *pursuant to the act,* it is difficult to understand how they can be made liable to the plain-

tiff, as a subsequent purchaser of the stock of the bank *from a stockholder*, by reason of any false statement contained in the report. It is quite clear that the report is required to be made to the superintendent solely, to enable him to exercise the supervision over the bank and its affairs which is imposed upon him by law, and so enable him to determine what action he shall take to protect the rights of bill holders, stockholders. and those who may have dealings with the bank. (2 *R. S.*, *5th ed.*, 442, 3, 4, § 125, 128, 131, 132 *and fol.*) The publication of the report by the superintendent is required to protect the rights of the same parties. The provisions of the statute referred to, are " regulations to prevent the insolvency of united corporations, and to secure the rights of their creditors and stockholders." They have no reference to those who have dealings with individual stockholders, but to those only who have dealings with the corporation. They are not designed to protect the rights of those who may purchase the stock of the bank of individual stockholders. The report is not made to them or for their benefit, nor is it designed to influence their action as purchasers of stock. They have, therefore, no right to rely upon it in their dealings with individual stockholders. If any fraud is committed by the bank or its officers, in making a false report, they alone, for whose benefit and protection the law is enacted, can avail themselves of the fraud. No intent to defraud, by the falsity of the report, or its publication, *pursuant to the statute*, can be alleged by any except a party whose rights were intended to be protected by the statute. A false statement made with intent to induce a party to act, and upon which he does act, and thereby sustains damage, will enable him to maintain an action. But the statement must, either in fact or contemplation of law, be made to the party who claims that he has been defrauded and brings the action, and it must be made *with a view of inducing him to act upon it.*

A special letter of recommendation of an insolvent, as worthy of credit, given by a party who has knowledge of the insolvency, with the intent to induce the party to whom it is addressed, to give credit to the insolvent, and in consequence of which such credit is given, will enable the party defrauded to maintain an action for the damages which he has sustained. And a general letter of recommendation of credit of an insolvent, and like knowledge, and an intent to defraud any one to whom it may be presented, and who may act upon it, will be sufficient to maintain an action by any one who has given credit to the insolvent upon the faith of the letter of credit, and has sustained damage therefrom. The law regards the letter as addressed to and intended to influence the action of every one who gives credit to the insolvent upon the faith of the letter. (*Zobinski* agt. *Smith*, 3 *Ken. R.*, 332; *Allen* agt. *Addington*, 11 *Wend. R.*, 474.) *But when upon the face of the false statement, or from the circumstances under which it is alleged to have been made, it is apparent that the intent was to defraud a particular party, or class of persons, and none other, no one except the person, or one of the class intended to be defrauded, can maintain an action for damages arising from the falsehood.* Under the circumstances assumed, all other persons are apprised that the statement is not to them, or designed to influence their conduct, and if they rely upon it they do it at their peril. It is the result of their own folly, and the absence of an intent to defraud the plaintiff being apparent from the nature of the statement, or circumstances under which it was made, as *alleged in the complaint*, the pleading would be demurrable.

In this case, the complaint was that the making verification and publication of the quarterly report was in pursuance of the requirements of section 125 of title 2, chap. 18, part 1, of the Revised Statutes. At the time the report was made and published, the plaintiff was neither creditor, bill-holder or stockholder of the bank. The char-

acter of the quarterly report, and the circumstances under which it was made, *as alleged in the complaint*, shows that it was not made to him, or for his benefit, or to induce him to act upon it. They negative the averment that the report was made with intent to deceive and defraud those who might thereafter become purchasers of the stock of the bank of individual stockholders. The plaintiff is not, therefore, entitled to maintain his action. (*Easigi* agt. *Mann*, 17 *How. U. S. R.*, 189, 199.)

The case is clearly distinguishable from those in which corporations and their officers and agents have published false statements in prospectuses or otherwise, to induce parties to enter into engagements with such corporations, and in which they have been defrauded. Such statements are regarded in law as addressed to and intended to influence the conduct of all who may deal with the corporations, on the faith of the statements put forth, and for the damages which result therefrom, the corporation and its officers are bound to respond. (*Moffat* agt. *Winslow*, 7 *Paige R.*, 124; *Gerhard* agt. *Bates*, 20 *E. L. and Eq. R.*, 129, 133; *National Exchange Co.* agt. *Drew*, 22 *E. L. and Eq. R.*, 1, 14; *Pentifox* agt. *Reynold*, 3 *Man. and Gr.*, 63.)

I think the complaint is defective also in not stating that the report was made and published with the intent to induce plaintiff to become a purchaser of stock of the bank, and that the general averment of an intent *to deceive* those who should become purchasers of the stock of the bank is not sufficient.

Judgment is ordered in favor of defendants upon the demurrer, with leave to plaintiff to amend on payment of $25 costs.

The plaintiff thereupon appealed to the general term.

JOHN D. SHERWOOD *and* JOHN C. WRIGHT, *for plaintiff.*
WM. A. BEACH *and* THOMAS B. MITCHELL, *for defendants.*

By the court—Gould, Justice.   I think the tendency of all the later decisions in this country and in England, is in favor of extending the liability of every one who makes a public representation which *he knows to be false*, and upon faith in which any one has been led into a business transaction, whereby he suffers damage.   I do not understand that it is at all necessary to the right of action that the representations should have been intended for the party sustaining the loss, or in any way addressed to him.   If it be made openly and publicly, so that it might well come to his ears, and if it does come to his ears, and *he acts upon it*, the party making it shall answer to him for the damages. He shall not be at liberty to sow falsehood broad-cast, without being responsible for the loss it causes.

A very late decision of the House of Lords was had in this case : · The chairman of a mining company by falsely representing to the stock exchange that two-thirds of the shares had been taken and paid up, procured the stock to be entered on the official list.

A stranger seeing the stock so entered, and knowing the rule that no such stock was entered unless so paid up ; and believing the fact to be in accordance with the representations, bought some of the stock on the exchange.   *It was held* (affirming the judgment of the exchequer chamber,) that the purchaser had a right of action against the *directors*, for the fraudulent representations.   (*Law Reports* *July*, 1859, *XXI.*, *p.* 160.)

In the case before us, it is averred that the president and cashier of the bank, (leaving out the *oath* to their statement as mere surplusage,) made and published a statement of the condition of the bank, on a given day, which statement was to their knowledge grossly false, giving the particular item which was untrue.

The complaint adds that this statement was made and published " in pursuance " of certain statute enactments. If in other respects this averment came up to the prin-

ciple I have stated, I consider it of no sort of consequence what the provisions of the statute were, or whether or not there were any statute on the subject; all that is required is the falsity of that statement, (known to the makers of it,) provided the statement be *so made* that it came properly to the plaintiff's knowledge and *he relying upon it* sustained damage thereby.

That, in fact, it was made to a public officer, and in a way to ensure its publication in a conspicuous and official manner, may well be grounds for holding that it was intended to deceive the *public;* but I do not see that *therefore* the defendants are any the less guilty of fraudulent misrepresentations. Nor does it seem to me of any consequence that the *statute* referred to had for its object something entirely different from protecting the plaintiff or the public against the kind of injury which the plaintiff has sustained.

The falsehoods may have been *made* for *one* purpose, and published for that; but *being published,* the public or any individual of the public has a right to *believe it.* It must have been the intention of the persons publishing it that it should be believed. And if believing it any one of the public acts on that belief, the makers and publishers of this falsehood are to be held liable for the consequences *they have caused.*

It seems to me refining too technically to say that the defendants made the report to *the bank,* and the bank to the superintendent, and the superintendent published it. Granting that true, the *bank* did not *tell the falsehood,* &c.; the persons who did, knew and intended the use to which this falsehood was to be, and was put. It is but one remove further off in the regular and usual chain by which the completed act was done. At any rate, the *complaint charges* that the defendants made and published the statement, and the case comes here on demurrer *conceding* that they *did so.*

The averment of *intent* in the complaint is "with intent to deceive and defraud *those who might become purchasers* and owners of the stock." This certainly is not so general as that the intent was to deceive and defraud the public. And yet, under the decision I have cited, a mere *stranger* to the making of the representations could have alleged *no other intent* than to deceive the public, and himself as one of the public. I should hold under our Code that the intent was sufficiently averred to authorize a recovery.

It seems to me that the ruling of the learned judge who gave the special term decision, (whose opinions are always entitled to great respect,) is not according to the present views of our courts, and I shall be in favor of reversing his decision.

HOGEBOOM, J., concurred.

WRIGHT, J., being in court of appeals, gave no opinion.

NOTE.—It has been settled in all the courts of England and of this country, that the officers and directors of a company making false statements or representations which they know to be false, that become public, as to the organization, capital or condition of the corporation, are liable to any stranger coming to a knowledge of such false statements or representations, and suffering loss or damage by purchasing stock or dealing with the corporation *on the faith of such statements or representations.* (*Bedford* agt. *Bagshaw,* 22 *Law Rep.,* 160; *cited in the foregoing opinion by Judge* GOULD; *Bagshaw* agt. *Seymour,* 93 *Eng. Com. Law R.,* 873, 45; *Johnson* agt. *Goslett,* 3 *Com. Bench R.,* 569–575; *National Exchange Co.* agt. *Drew,* 32 *Eng. L. and Eq. R.,* 10; *Colt* agt. *Wollaston,* 2 *P. Wms.,* 154; *Green* agt. *Barrett,* 2 *Simons,* 45; *Jones* agt. *Garcia Del Ris,* 1 *Tur. and Russ.,* 297; *Blair* agt. *Adair,* 1 *Simons,* 37; 2 *id.* 289; *Gerhard* agt. *Baley,* 20 *Eng. Com. L. R.,* 130; *Colman* agt. *Riches,* 29 *Eng. L. and Eq. R.,* 323; *The Charitable Corporation* agt. *Sutton,* 2 *Atk. R.,* 401–1742; *Hitchins* agt. *Congreve,* 4 *Russ.,* 512; *Walburn* agt. *Ingilby,* 1 *Milne and Keene,* 61; *Foss* agt. *Harbottle,* 2 *Hare,* 401; *Paisley* agt. *Freeman,* 3 *Term R.,* 51; *Pontifix* agt. *Reynolds,* 3 *Scott's N. R.,* 390; *Blount* agt. *Scott,* 2 *Scott's N. R.,* 588; *Gallager* agt. *Brunel,* 6 *Cow.,* 346; *Allen* agt. *Addington,* 7 *Wend.,* 9; *Bailey* agt. *The Mayor, &c.,* 3 *Hill,* 531; *City of Buffalo* agt. *Holloway,* 3 *Seld.,* 493; *Culver* agt. *Avery,* 7 *Wend.,* 384; *Upton* agt. *Vail,* 6 *John.,* 181; *Barney* agt. *Dewey,* 13 *John.,* 224; *Williams* agt. *Wood,* 14 *Wend.,* 126, 10 *Paige,* 330; *Dodge* agt. *Woolsey,* 18 *How. U. S. R.,* 33; *Robinson* agt. *Smith,* 3 *Paige,* 230; *Gardner's Institutes,* 320–323; *Mead* agt. *Mali,* 15 *How. Pr. R.,* 347; *Cross* agt. *Sackett,* 16 *How. Pr. R.,* 62.)—REP.