WAKEMAN vs. DALLEY, impleaded with others.

A director of a corporation, who sees a card issued by the officers of the company in the ordinary course of their business, with the names of the directors attached, can not be held liable for false representations contained in the card, when it is found by the referee that he never circulated the cards and did not know the representations were untrue, and had no knowledge that they were true, but allowed his name to be used, without reflection as to the effect of doing so.

It follows from such a finding, that such director had no purpose to deceive, and the intent to deceive is a necessary ingredient to create such a liability.

Fraud, and fraudulent intent, is always a question of fact for the jury; and although there are cases where it is said the law presumes fraud from certain acts, yet that presumption is only the conclusion of the law upon the facts as they are proven.

THE plaintiff sues the defendants to recover from them damages alleged to have been sustained by him in consequence of false representations as to the condition of the Webster Fire Insurance Company. The defendants were directors, and at various times cards were published with the names of the directors attached, at the head of which it was stated, "Cash capital $150,000." These cards also stated that the company would insure buildings, &c. on as favorable terms as any other company. The defendant was not one of the original directors, but was elected in April, 1855; but there is no proof of his having met with the directors until June, 1855. In July, 1855, an examination was made into the affairs of the company, and in August, 1855, a report was made by the commissioner that frauds had been perpetrated in the organization of the company, and that the assets were insufficient to justify continuing the business of the company and recommending its dissolution.

There was nothing connected with the organization of the company affecting the defendant Dalley, and the only ground on which he is sought to be made liable is the publication of the cards by the officers of the company, stating that the company had a cash capital, and the indorsement of the same

statement on the policies of insurance. Exhibits No. 7 and 8 are cards having on them the name of Dalley as a director, containing the same statement as to the cash capital. These were issued while the company was in Wall street, to which place the office was removed in May, 1855.

The referee finds that there was fraud in the organization of the company, and that the whole capital was not paid in, except nominally. That cards containing all the names except Dalley and Pierce were issued from the office in Broadway. That similar cards were issued from the office in Wall street, and one of them was seen by the plaintiff before he purchased any of the stock of the company, and such cards only stated that the company would insure against loss or damage from fire. That the cards were circulated by the other defendants, and that they made representations as to the capital and condition of the company, some of which came to the knowledge of the plaintiff before he purchased stock in the company. That the plaintiff was deceived by these representations, and believed from the representations on the cards and policies and those made by Harris and Arnold, that such representations were nearly true, until August, 1855. That after that, relying in part on those representations and on the report of Mr. Barnes the commissioner appointed by the comptroller, he believed that the capital stock of the company was worth about one third of par. That on the 26th of July he made a contract to purchase 200 shares of stock, for which he paid in different payments $950 cash and 1500 shares of Florence and Keyport stock, worth $1.75 per share. On the 21st September he bought 50 shares, and on the 24th September 150 shares, and on 4th October 200 shares, paying for them in Florence and Keyport stock. He also finds that Dalley was a director in April, 1855, but that he entered into no combination with the other directors and made no verbal representations, but allowed the cards to be issued with his name upon them, and with his knowledge. That he did not know in fact that such representation was

untrue, but had no good reason to believe it to be true, and was fully aware that he had no knowledge that it was true.

The referee then finds as matter of law, that a court would instruct a jury that the defendants are to be presumed to intend the natural effects of their acts; that if they allowed the cards to be issued and took no pains to ascertain whether the statement was true or not, they were to be deemed accountable, as much as if they had known there was no such capital. And the referee adds that, "relying on this view of the law, and with the aid of the other facts found, I find as matter of fact that said Dalley also falsely represented the capital of the said insurance company to be $150,000, with the intention to deceive any one who should purchase the stock of that company, and I also find as a separate matter of fact, independently of that view of the law, that the plaintiff was deceived by said cards as well as by said verbal representations."

He also found that the plaintiff had sustained damage to the amount of the sums paid on each of the purchases of stock, with interest from the time of payment, and gave judgment against all the defendants, except one who proved that he inquired whether such statement was true and was informed that it was. From the judgment entered on the report, the defendant Dalley appealed.

*Henry Woodruff,* for the appellant.

*W. Edwards, Jr.* for the respondent.

*By the Court,* INGRAHAM, P. J. So far as the complaint alleges a conspiracy to defraud, the finding of the referee that Dalley entered into no combination settles that no judgment could be rendered against him therefor. He was not a director at the time, and there can be no reason for charging him, from any fact stated in the evidence. Nor is he charged with any verbal representations. On the contrary the referee finds that he made none.

Wakeman *v.* Dalley.

The only fact found by the referee upon which the defendant is sought to be made liable is the publication of a card by the officers of the company, which stated the cash capital to be $150,000. One of these cards was published after he became a director, and had his name upon it. It can not be pretended that he was liable for any other, because his name was not on it, and there is no evidence to show that he knew of their existence. Although the referee finds that the plaintiff was deceived by the cards, as well as by the verbal representations, he does not find that the card containing the name of Dalley was ever shown to or seen by the plaintiff, and I have looked through the testimony in vain for any such proof.

We are left then to decide whether a director of a corporation, who sees a card issued by the officers of the company in the ordinary course of their business and which contains a list of the directors, is to be held liable as guilty of false representations, when the referee also finds that he did not know the representations were untrue, and had no knowledge that they were true, but allowed his name to be used without reflection as to the effect of doing so. It must follow from this finding that the defendant had no purpose to deceive. Any other conclusion would be inconsistent with the finding that the defendant suffered the cards to be used without reflecting upon the consequences. There can be no doubt, at the present day, that a statement of a fact as true which was known to be untrue, or which was actually untrue, and was not within the knowledge of the party making it, provided such representation is made with an intention to deceive the plaintiff, would form a good cause of action. The intent to deceive is a necessary ingredient to create such liability. This was held as necessary in *Allen* v. *Addington*, (7 *Wend.* 9,) and there are many cases cited in that case by Ch. J. Savage, to establish that principle. And in the same case in the court of errors, (11 *Wend.* 374,) Walworth, Ch. says: All the cases against third persons, who are not personally interested in the transaction to which the false affirmation

or concealment relates, go upon the ground that the defendant · has practiced an intentional deception upon the plaintiff for the purpose of doing him an injury.

This rule was recognized by Denio J. in *Zabriskie* v. *Smith*, (3 *Kernan*, 322,) in which it was held that the complaint should aver and the plaintiff must prove that the representations were made with intent to deceive and defraud.

In *Craig* v. *Ward*, (36 *Barb.* 378,) the fraud consisted in the sale of a mortgage by Ward to Craig, and the repesentations were as to the validity of the mortgage. The fraudulent intent there appeared, and the ruling on the trial and the opinion of Johnson, J. nowhere intimate that proof of a fraudulent intent was not necessary. So in *Bennett* v. *Judson*, (21 *N. Y. Rep.* 238,) the representations were made to induce the plaintiff to buy land, and the court held that the affirmation of what one does not know or believe to be true is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false. If the statements were made with an intent that the plaintiff should rely upon them, and if he did rely upon them, it was as much a fraud as if they were known to be untrue. In this case as in the preceding one, cited above, the fraudulent intent was not denied. .

So in *White* v. *Merritt*, (3 *Seld.* 352,) it was held that the action would lie where there was an assertion of a falsehood with a fraudulent design as to a party, and a direct and positive injury. But a mere misrepresentation without a fraudulent design is not sufficient. (*Young* v. *Covell*, 8 *John.* 23.)

There is a case of later date in which a contrary rule appears to have been adopted, viz : *Morse* v. *Switz*, (19 *How. Pr. Rep.* 275,) where Gould, J. in his opinion says : "Every one who makes a public representation which he knows to be false, and upon faith in which any one has been led into a business transaction whereby he suffers damage, may be liable." If it is intended to extend this liability to cases

Wakeman *v.* Dalley.

where no fraudulent intent is shown, and where the misrepresentation is made through mistake or neglect, I can not assent to that doctrine. But on looking at the complaint it will be seen that a fraudulent intent to deceive is there averred, and the direct affirmation of a false statement known to be false, will justify the finding of such false intent. But I am unable to find any case where mere negligence, without any act of the party, and without any intent to deceive or defraud, has ever been held to be sufficient to cause such liability.

Such is the present case. The defendant Dalley did no act for which he can be held liable. There is even grave doubt whether he ever saw the card in question. He had no knowledge that the statement was untrue. He never circulated the cards, and the referee finds he allowed his name to be so used without reflection as to the consequences, thereby destroying any presumption of intentional fraud.

I think, also, the referee was in error in making the decision of a question of fact to depend upon his view of the law. He says he thinks a court would instruct a jury that a defendant is to be presumed to have intended the natural effect of his acts; and relying on this view of the law he finds as matter of fact that the defendant made the representation with intent to deceive. Whether the defendant intended to deceive was a question of fact, to be decided as such, upon the evidence and not upon any view of the law which the referee might entertain. If the finding on this question of intent is made to depend on the view of the law and not on the testimony, then it becomes a question of law and not of fact. Fraud and fraudulent intent is always a question of fact for the jury, and although there are cases where it is said the law presumes fraud from certain acts, yet that presumption is only the conclusion of the law upon the facts as they are proven.

There are other reasons why this judgment ought not to be sustained. The evidence of the plaintiff himself is that

he did not believe the statement. He says, as stated by the referee, that he believed the statement to be nearly true. And on the 9th of August, 1855, he had the comptroller's report, which showed the whole capital was not sound. He testified that when he made the second purchase, he relied on the report of Mr. Barnes and on representations made by the secretary and others in the office of the company. Nothing is said of the statement of the cards. That was shown to be untrue, and the plaintiff does not pretend that he gave any credit to it in making the purchases after the first. In fact he knew it to be false, and he could not thereafter claim to have given credit to them so as to entitle him to recover.

The amount paid on these purchases of stock shows that the plaintiff must have had notice that the stock was worth much less than par. The purchases were made at less than one fifth of that value, and then paid for in part by other stock which also appears to have been at a low rate in the market. It is difficult to believe that the plaintiff, under these circumstances, could have believed or trusted to the representations.

An objection is made to the want of exceptions to the referee's report. So far as this relates to the findings of law, the objection is well taken, as the general exception at the end of the report is insufficient. But exceptions are not necessary where the findings of fact are contrary to the evidence, or where upon the whole case the judgment is erroneous.

The motion to dismiss the complaint, also, should have been granted, and to the refusal there was an exception entered. I find no evidence given afterward that could affect the defendant Dalley, except his own testimony, in which he distinctly states that he had no knowledge of any fraud, until after the comptroller's report.

The judgment against Dalley should be set aside, and a new trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, September 19, 1865. *Ingraham, Leonard* and *Sutherland,* Justices.]