# Einstein, Hirsch & Co. *v.* Marshall & Conley.

### *Action on the Case for false Recommendation.*

1. *Recommendation; when subjects person giving to action, if false.*—A recommendation is not a guaranty; yet, if a person recommends to a wholesale merchant one who desires to purchase goods on a credit, knowing that the merchant is unacquainted with his financial condition and credit, good faith requires that his representations must be true; and if he knowingly or recklessly makes false representations, on the faith of which the merchant sells goods on a credit, and loses thereby, an action for damages lies against him.

2. *Charge to jury; what free from error.*—In action against a writer of a letter of recommendation in these words, "Mr. H. is doing a small but safe business in this town; he wishes to buy several hundred dollars worth of groceries from you; he is good for all he buys, and you may safely sell him a bill; we recommend him to you, and hope you will treat him satisfactorily,"—the court having instructed the jury as follows: The effect and meaning of the letter is, that H. had, at the time, the ability to pay for all goods purchased by him; that he had at his command means, property or money, with which to pay for all goods he might buy from plaintiffs, and his ability was such as to make it safe for plaintiffs to credit him; that, in order to make a man good in the sense in which the word is here used, it is not necessary for him to

[Einstein, Hirsch & Co. v. Marshall & Conley.]

have more property than is exempt from levy and sale under execution; but the word cannot be restricted to a willingness to pay when in funds, nor merely to the promptness with which he had previously met his obligations; but that he had, at the time, property or money with which to meet the amount for which he was recommended, or was in condition and could command the same when the debt fell due; that the term *several* means more than two, but not very many, and includes seven—*held*, that there was no error in these instructions.

3. *Same; when erroneous.*—A charge to the jury in these words: If the jury believe from the evidence that the defendants represented to plaintiff, as alleged in the complaint, that he was good for all he might buy on a credit, they must then find from the evidence whether, at the time the representation was made, H. had property enough to enable him to pay the amount for which he was so recommended to credit, and that if he had not such property, he was not good for such amount"—asserts an inaccurate test of ability to pay, and is erroneous.

APPEAL from the Circuit Court of Perry.

Tried before Hon. GEORGE H. CRAIG.

This was an action on the case for damages, brought by the appellees, Marshall & Conley, against the appellants, Einstein, Hirsch & Co., for falsely and fraudulently recommending as worthy of credit, one Max Heller. The evidence showed that, in 1871, Heller came to the store of Marshall & Conley, and presented a letter, of which the following is a copy:

"UNIONTOWN, Sept. 26th, 1871.

*Messrs. Marshall & Conley, Mobile, Ala. :*

DEAR SIR—The bearer of this, Mr. M. Heller, is doing a small but safe business in this town. He desires to buy several hundred dollars worth of groceries from you. He is good for all he buys, and you may safely sell him a bill. We recommend him to you, and hope you will treat him satisfactorily.

Very respectfully, yours, &c.,

EINSTEIN, HIRSCH & Co."

It was admitted that this letter was written by Hirsch who was a member of the firm of Einstein, Hirsch & Co., and that he gave it to Heller to be delivered to the appellees.

Heller obtained goods of the appellee to about $600 or $700, and died, leaving the bill unpaid and no property. Mr. Marshall and the clerk, who sold Heller the goods, both testified that they sold them to him solely on the recommendation of Einstein, Hirsch & Co., and that the only information they had of his commercial standing was derived from the letter copied above. Several witnesses testified that Heller, at the time he obtained the goods of appellees, had no property except a small stock of goods, and that these were not over the amount allowed by law as exempt. One Cohen, a witness for plaintiff, testified that he would not have cred-

ited Heller for the amount of several hundred dollars, and that his stock at the time the credit was given did not, in his opinion exceed one hundred dollars in value. This witness further testified that, in 1870, Heller came to Uniontown, and began to peddle with a pack, and that he continued in this business until the summer of 1871, when he rented a store from witness and commenced doing business therein, keeping cakes, candies, fruit, &c. Upon cross-examination, this witness testified, that Heller had always promptly paid the rent in money, except the last month, when he paid it in flour. One Marx, also a witness for plaintiffs, testified that he was a merchant in Uniontown, and had lived there since 1868; that he was familiar with the value of the class of goods which Heller kept, and that, in his opinion, the stock at no time exceeded one hundred dollars in value. One Nounenmacher, a witness for the defendant, testified that he became acquainted with Max Heller in the fall of 1869, and that said Heller boarded with him off and on, from that time until the spring of 1871, and always paid his board bills promptly, which were about four or five dollars at a time; that during the year 1870, Heller frequently had money on deposit with him; and that, in 1871, he recollected that he had on deposit, at one time, about three hundred dollars, which he drew to go after his family, which then resided in Chicago, or shortly after his return, and that this deposit was the last he had with the witness. One Lowengard, who was a merchant in Uniontown, testified that he would have sold Heller all the goods he wanted on a credit; that he had sold him several bills of goods, which he had promptly paid for, and that he was a prudent, hard working, industrious man. On cross-examination, this witness stated that, to the best of his recollection, the bills sold to Heller by him, and above referred to, did not amount to more than five or six dollars at a time, but that he would have sold him more if he had wanted them. Hirsch, one of the defendants, testified that he gave the letter, above set out, to Heller for the purpose of being delivered to plaintiffs; that he knew Max Heller, and had known him since 1869 or '70; that his firm had been selling Heller goods for about two years, and that all goods sold him were promptly paid for; and that he would willingly have sold him a thousand dollars worth of goods on a credit; that he gave the letter at the request of Heller, who stated that he wanted to buy in Mobile of first hands, and that he never intended or anticipated that Marshall & Conley would suffer any loss; and that he was not interested with Heller in any of his business; that he gave the letter, as a matter of accommodation, to

Heller, believing it to be true and without any intent to injure the appellees, or any expectation of gain thereby.

This was all the evidence, and the court, at the request of plaintiffs, gave its charge in writing, as required by the Code, which charge is as follows : "The plaintiffs sue to recover of the defendants a certain amount of money, as damages suffered by them by the sale of goods to Heller on the recommendation of defendants. The plaintiffs must make out their case by the weight or preponderance of the evidence before they can claim a verdict. Defendants admit that they wrote the letter which is the foundation of this suit. In order to recover, plaintiffs must show that they sold Heller the goods ; that they made the sale by reason of the letter of recommendation referred to ; that he was damaged ; the amount of damages ; that such damage was the result of such sale ; that the statements which were made in the letter, which induced the sale, were false ; that the defendants knew them to be false when they made them ; and that they made such statements with the intent to deceive the plaintiffs. If they have made this to appear to your satisfaction, by the weight of the evidence, then they are entitled to recover the amount they have shown to be the damage, and interest to date.

"The letter, in evidence, which is the foundation of this suit, is a letter of recommendation of Heller. Its effect and meaning is, that Heller's condition was, at the time, good ; that is, that he was sufficient ; that he had the ability to pay for all goods purchased ; that he had at his command means, property, or money, with which to pay for all goods he should buy from the plaintiffs, and that his ability was such as to make it safe for the plaintiffs to trust or credit him.

"It is not necessary for a man to have more property than is exempt from levy and sale under execution, to make him good in the sense in which it is here used ; but you can not restrict the word *good* to a willingness to pay when in funds, nor merely to the promptness with which he had before met his obligations ; but that he had at the time property or money with which to meet the amount for which he was recommended, or was in a condition and could command the same when the amount for which he obtained credit fell due.

"The term, several hundred, means more than two, but not very many hundred dollars, and seven hundred dollars is included in the term as used.

"If the weight of evidence satisfies you that the defendants wrote the letter in evidence for the purpose of obtaining credit for Heller with plaintiffs, and did so with the inten-

tion and expectation that the plaintiffs would act upon the representations made in such letter as to Heller's ability to pay for the goods bought; and if the evidence shows that such representations were false, and that the defendants knew them to be false at the time; that the plaintiffs did act upon such representations, and by reason thereof suffered loss, then the jury would be justified in the presumption that the defendants intended, in writing the letter, to deceive and defraud the plaintiffs; and if you so believe, the plaintiffs are entitled to recover in this case the amount of damages proved, with interest, and they are not excusable from the fact that they received no benefit from the transaction.

"The defendants say, when they wrote the letter, which is the foundation of this suit, Heller was solvent, was able to pay, and that they did not intend to deceive or defraud plaintiffs, by writing the letter referred to; they say that they made the representations in good faith, believing them to be true, not knowing them to be false; and that their dealings with him, and the reputation which he had established as an honest and prompt man of business, and the goods which he had on hand, were the reasons that lead them to their belief of his ability to pay, and their trust and confidence in him. The jury should look to the evidence of Heller's condition as to property and reputation, in ascertaining the fact of the truth or falsity of the statements made in the letter, and of the intention of defendants in making such representations.

"A mere opinion of defendants as to Heller's ability to pay would not bind them, unless the intention to deceive is also established; but if one make representations of the ability of another to pay, intending that a third party shall act upon such representations, and makes the representations to the third party recklessly, and without regard to their rights, and such representations are acted upon, and the person to whom they were made, and who acted upon them, is damaged thereby, and the representations prove to be false, then the jury may presume that the intention to deceive existed; and, if so, the person damaged would be entitled to recover in an action against the party making the representations."

Various portions of this charge were excepted to by the defendants, but the view which the court took of the charge, as a whole, renders it unnecessary to set them out specifically.

The court, at the written request of the plaintiffs, gave the following charges, which were separately excepted to by the defendants:

[Einstein, Hirsch & Co. v. Marshall & Conley.]

1. If the jury believe, from the evidence, that the defendants represented to the plaintiffs, as alleged, that Heller was good for all he might buy on a credit, and that plaintiffs might safely sell him a bill of goods on a credit; that such representations were made by defendants with the intent to influence plaintiffs to sell Heller a bill of goods on a credit; that plaintiffs were thereby induced to make such sale to Heller; that Heller was not, at the time such representations were made by defendants, good for the amount for which he was so recommended for credit; and that defendants were aware, at the time they made the representations, that Heller was not good for such amount—then it follows, as a necessary consequence, that the defendants made the representations with the intent to deceive and defraud the plaintiffs, as every man is presumed to intend the necessary consequences of his act; and if the plaintiffs sustained damage by acting upon such representation, they will be entitled, in this action, to recover such damages, not exceeding one thousand dollars.

2. That representations of this character are frequently made from inconsiderate good nature, prompting a desire to benefit a third person, and without a view of advancing the party's own interests. If one make representations productive of loss to another, being aware, or having good reason to believe, at the time, that such representations are false, he is responsible as for a fraudulent deceit.

4. If the jury believe, from the evidence, that defendants represented to plaintiffs, as alleged, that Heller was good for all that he might buy on a credit, they must then find from the evidence whether Heller had, at the time the representations were made, enough property to enable him to pay the amount for which he was recommended to credit; if he had not such property, he was not good for such amount.

The giving of these charges is now assigned as error.

J. W. BUSH, and W. B. MODAWELL, for appellant.—No presumptions of fraud can be indulged in. To constitute fraud, every essential ingredient must be clearly proved. The recommendations, to be actionable, must be *knowingly* and *wilfully* false. It is not enough that they be *negligently* made, for the intent to deceive is the very gist of the action.—44 Barb. 498; 40 New York, 565; 2 East, 92; 11 Wend. 375; 24 Ga. 461; 30 Vermont, 797; 1 Metcalf, 1.

W. E. & R. H. CLARKE, and THOS. H. WATTS, *contra.*—In order to prove such fraud as the law considers sufficient to support the action, it is only necessary to show that what

the defendants assert was false within his own knowledge, and occasioned damage.—1 Smith Lead. Cases, marg. p. 79, and authorities there cited; 7 Cranch, 69. One who recklessly, and without regard to the rights of another, makes to such other a false statement, intending it to be acted upon, is liable in damages if it be acted upon to the damage of such other.—16 Ala. 785 ; 18 Ala. 332 ; 29 Ala. 352 ; 35 Ala. 254 ; 38 Ala. 363 ; Kerr on Fraud and Mistake, 53–4, 5, 6, 7, 68–9, 82, 85, 324; 13 C. B. 77 ; 17 Beav. 871 ; 11 M. & W. 415.

STONE, J.—Commercial credit has become one of the conditions of commercial prosperity. Ability to pay, punctuality, and business qualifications are the foundations on which such commercial credit can alone be maintained. In mercantile transactions, the retail dealer must necessarily purchase from the wholesale merchant ; and these two classes generally have their business residences remotely apart. When a stranger desires to purchase on credit, safety, as well as usage, requires that he shall furnish to the wholesale dealer, satisfactory assurance that he is worthy of credit. This assurance is frequently given in the form of a letter of introduction and recommendation. The wholesale merchant, having no other means of information, must, and does rely on it, if he knows and has confidence in his correspondent. Based on such recommendation alone, he parts with his merchandise, in value amounting to hundreds or thousands of dollars. And this very consequence is the expected, intended, known result of the recommendation. This being the case, common sense, as well as the law of the land, demands that good faith shall be observed in giving such recommendations. Bad faith in such case, is a fraud on him who acts upon it to his damage.

The general doctrine on this subject may be stated as follows :

"An action will lie against an uninterested person for making a false and fraudulent representation of a fact as then existing, (and not otherwise) to the seller, whereby the latter sustains damage by trusting the purchaser on the credit of such misrepresentation. . . . But this rule only applies to cases where the representation by a third person is known by him to be false, since otherwise it can only have weight as an expression of opinion ; for if it appear to have been made by him, *bona fide*, he will not be liable, although it prove to be unfounded."—Sto. Contr. § 515. See, also, *Russell v. Clark*, 7 Cranch, 69 ; *Pasley v. Freeman*, 3 T. R. 51 ; *Addington v. Allen*, 11 Wend. 374 ; *Lord v. Goddard*,

13 Pet. 198; *Corbit v. Gilbert*, 24 Geo. 454; *Haycraft v. Creasy*, 2 East, 92; *Tryon v. Whitmarsh*, 1 Metc. (Mass.) 1; *Wakeman v. Dalley*, 44 Barb. 498.

In this extract, it will be observed, the author's language is, that to be actionable, the representation must be both false and fraudulent. A representation of what is believed to be true, though false in fact, can not, when made by a stranger, confer a right of action. It would be monstrous to hold parties civilly responsible for the consequences, to strangers, of mere errors of judgment or fact, into which they were innocently betrayed. Bad faith—the intended creation of an impression known to be false—on which another relies and acts, and thereby suffers loss, is what the law stamps with the stigma of fraud, and condemns. The known misrepresentation and its consequences consummate the fraud.— *Foster v. Charles*, 6 Bing. 396; *Corbet v. Brown*, 8 Bing. 433; *Polhill v. Walter*, 3 B. & Adol. 122; *Pontifex v. Bignold*, 3 Scott, N. R. 390.

The old case of *Chandelor v. Lopus*, reported in 1 Smith Lead. Cases, 77, was the case of alleged fraud in the sale of a stone, which the seller represented as a Bezoar stone, and sold as such. Action on the case to recover damages, averring that the stone was not a Bezoar stone. The case was heard in the Court of Exchequer. All the Barons, except Anderson, held "the bare affirmation that it was a Bezoar stone, without warranting it to be so, is no cause of action; and although he knew it to be no Bezoar stone, it is not material. For every one, in selling of his wares, will affirm that his wares are good, or that the horse he sells is sound; yet, if he warrants it not to be so, it is no cause of action." We submit, if this language does not sanction looser morals than the present state of the law will justify. In a note to this case, in 1 Smith Lead. Cases, 77, the authority of this case is doubted. The later authorities, even in England, we think entirely overturn it.

In *Baily v. Merrell*, 3 Bulstrode, 95, CROKE, J., said: "Fraud, without damage, or damage, without fraud, gives no cause of action; but where these two do occur, there an action lieth." And Lord C. B. COMYN said: "An action upon the case for a deceit lies when a man does any deceit to the damage of another."—Com. Dig. Title, "Action upon the case for a deceit."—A 1.

In the case of *Fuller v. Wilson*, 3 Q. B. 58, the question was, whether an action would lie for a false representation made, which induced a trade with the person whose agent made the representation in part. Lord DENMAN, C. J., delivered the opinion of the court and said: Whether there

was moral fraud or not, if the purchaser was actually deceived in his bargain, the law will relieve him from it. . .
The question is, not what was passing in the mind of either, but whether the purchaser was in fact deceived by them, or either of them." This doctrine was adhered to in *Evans v. Collins*, 5 Q. B. 804.

In *Evans v. Edwards*, 13 C. B. 777, MAULE, J., said: "I conceive that, if a man having no knowledge whatever on the subject, takes upon himself to represent a certain state of facts to exist, he does so at his peril; and, if it be done with a view to secure some benefit to himself, or to deceive a third person, he is, in law, guilty of a fraud, for he takes upon himself to warrant his own belief of the truth of that which he so asserts." So in *Taylor v. Ashton*, 11 Mees & W. 401, it was said, "that in order to constitute fraud, it was not necessary to show that the defendants knew the fact they stated to be untrue; that it was enough that the fact was untrue, if they communicated that fact for a deceitful purpose."—See, also, *Pulsford v. Richards*, 17 Beav. 87; *Bennett v. Judson*, 21 N. Y. 238.

This doctrine has received the repeated and unqualified sanction of this court. In *Monroe v. Pritchett*, 16 Ala. 785, it was held that, "In an action on the case by the vendee against the vendor of land, to recover damages for falsely representing that the tract embraced a certain designated portion of good land, whereby the vendee was induced to make the purchase, it is not necessary to prove that the vendor knew that the representation was false at the time he made it."—See, also, *Atwood v. Wright*, 29 Ala. 346; *Kelly v. Allen*, 34 Ala. 663; *Blackman v. Johnson*, 35 Ala. 252; *Foster v. Kennedy*, 38 Ala. 351.

But, it will be observed that, in all these cases, the question arose between the seller and buyer, on an alleged misrepresentation, by the former to the latter, of some property of the land or goods he was selling. In such case, the author of the injury receives the profit of it, and it is simple morality that he shall restore the ill-gotten reward, for which he has paid nothing. We have no wish to depart from this wholesome principle.

The question presented by the present record is different. The person who made the representation was a stranger to the contract, and did not, and could not, possibly derive any profit therefrom. If he be liable at all, it is simply because he has done the plaintiff an injury, "which nought enricheth him."

In Kerr on Fraud and Mistake, 324, it is said, "An action on the case for damages in the nature of a writ of deceit, lies

(11)

at law against a man for making a false and fraudulent representation, whereby another is induced to enter into a transaction, and by so doing sustains damage. If the representation be false, it is immaterial that it may have been made without any fraudulent intent, or that the party who made it may have derived no benefit from it. The principle of law is, that fraud, accompanied by damage, is, in all cases, a good cause of action. A representation, however, honestly believed to be true by the party making it, is not, independently of the duty cast on him to know the truth, a good cause of action, although it may prove to be untrue."

In the case of *Boyd v. Brown*, 6 Penn. St. 310, a case presenting the question we are considering, the court said : "The ground of action is the deceit practiced upon the injured party ; and this may be either by the positive statement of a falsehood, or the suppression of material facts, which the inquiring party is entitled to know. The question always is, did the defendant knowingly falsify, or wilfully suppress the truth, with a view of giving a third party a credit to which he was not entitled. It is not necessary there should be collusion between the party fasely recommending, and he who is recommended ; nor is it essential, in support of the action, that either of them intended to cheat and defraud the trusting party at the time. It is enough, if such has been the effect of the falsehood relied on. Misrepresentations of this character are frequently made from inconsiderate good nature, prompting a desire to benefit a third person, and without a view of advancing the party's own interests. But the motives by which he was actuated do not enter into the inquiry. If he make representations productive of loss to another, knowing such representations to be false, he is responsible as for a fraudulent deceit."

In *Marsh v. Falkner*, 40 N. Y. 562, the court said : "The burden was on the plaintiff of showing, either that the defendant knew, or had good reason for believing, that Kahn was insolvent, and that the representations were, therefore, false when they were made ; or, that he intended the plaintiff should understand him to be communicating his own actual knowledge by means of them, when he possessed no knowledge upon the subject."

In *Evans v. Collins*, 5 Q. B. 804, Lord DENMAN, C. J., delivering the opinion of the court, said : "He (the defendant) was not bound to make any statement, nor justified in making any which he did not know to be true ; and it is just that he, not the party whom he has misled, should abide the consequences of his misconduct. The allegation that the

defendant knew his representation to be false is, therefore, immaterial; without it, the declaration discloses enough to maintain the action; and nothing that goes beyond that necessity need be proved."—See, also, the important case of *Addington v. Allen,* in New York Court of Errors, 11 Wend. 374.

An unbending rule can not be laid down for all cases, where, upon the representations of an uninterested person, one trusts another, and suffers loss. Much must depend on the circumstances of the particular case. But when, as in this case, the person recommending knows that the object of the party procuring the recommendation is to obtain credit at a distance; knows that the proposed seller is unacquainted with the financial condition and credit of the proposed buyer, the law, in harmony with good morals and good neighborhood, requires that the same shall be faithfully and truthfully given. A representation, as fact, of that which the party knows to be false; or, of that, of the truth of which he has no knowledge or well-founded belief, falls below the standard of legal requirement. And if it turn out in fact that the representation is false, and the seller is deceived and suffers loss in consequence of the sale he made on the strength of it, the party recommending must make good the loss. It is no excuse for him that he did not collude with the purchaser; that he was not interested in, or benefited by the purchase, or that he did not know whether the representation he made was true or false. Good faith requires that what he represents as fact shall be true, or, that, from a proper knowledge of the surroundings, he is justified in having an intelligent belief that what he asserts is true. Mere spirit of accommodation, or desire to serve a friend, we fear, cause many recommendations, which entail heavy loss on him who trusts, and is misled by them. It is time it should be known that he who thus knowingly, fraudulently, or even recklessly enables one to cheat another, thereby shoulders the burden himself. Candor and good faith are what the law requires; for the law does not convert a mere recommendation into a guaranty. Nor is the onus on him who recommends another to prove the truth of his recommendation. The law presumes him innocent until the contrary is shown. And, as part of this, the law, in the absence of testimony, will presume that the recommender had proper knowledge whereof he spake, and that he had an intelligent belief of the truth of what he asserted.

When, however, the testimony convinces the jury that the recommendation was knowingly false, and on the strength of such recommendation credit was given, and a loss sustained,

these, with the fact that the statements in the recommendation were false, constitute deceit and a right of action in favor of the person who was influenced thereby. And when given recklessly, or from favoritism, without knowing whether it is true or false, attended by the circumstances above postulated, these are proper facts, with the other testimony in the cause, to be weighed by the jury, in determining whether or not the defendant was guilty of the deceit charged; and, unexplained, would authorize a verdict in favor of plaintiff.

We do not think the Circuit Court erred in the construction of the letter of recommendation.—See words "several" and "good," Dictionaries; see, also, *Crown v. Brown,* 3 Verm. 707.

In the general charge to the jury, and in the first and second charge given at the instance of plaintiff, we find no error of which appellant can complain.

In giving the charge numbered 4, asked by plaintiffs, the Circuit Court erred. The property owned by Heller, at the time of the recommendation, may have been insufficient of itself to pay for the goods he proposed to purchase; and yet, the goods purchased, added to his property previously owned, and his business qualifications and commercial standing, may have rendered him "good" for the "several hundred dollars" of goods, for which his solvency was vouched. We suppose that few merchants, in buying a stock of goods on time, expect, or are able to pay entirely for them, with means outside and independent of the proceeds of such goods, afterwards to be sold. The charge given ignored entirely this important resource of a merchant. Few dealers, we apprehend, could stand this severe test.

Again, this test might, and in many cases would, be utterly fallacious. The purchaser might own, "at the time the representation was made, enough property to pay" for the goods, and yet be "not good for such amount," by reason of other debts, which rendered him insolvent.

For this single error, the judgment of the Circuit Court is reversed, and the cause remanded.